25 Civ. 1232 (PAE)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADEWALE OLUKAYODE, MICHELLE MORAN,
MOR TALLA NDIAYE, MAXIMILLIAN SILVER,
AND BLAKE DEVLIEGER,

Plaintiffs,

-against-

CITY OF NEW YORK, FORMER MAYOR BILL
DE BLASIO, FORMER NEW YORK CITY
POLICE DEPARTMENT COMMISSIONER
DERMOT SHEA, and FORMER NEW YORK
CITY POLICE DEPARTMENT CHIEF OF
DEPARTMENT TERENCE MONAHAN,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

*MURIEL GOODE-TRUFANT*
*Corporation Counsel of the City of New York*
*Attorneys for Defendants*
*100 Church Street, 3rd Floor*
*New York, New York 10007*
*By: Zoe Reszytniak*
*Tel: (212) 356-2547*

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................ 1

RELEVANT STATEMENT OF FACTS & PROCEDURAL HISTORY ...................................... 2

STANDARD OF REVIEW ............................................................................................ 3

ARGUMENT ............................................................................................................ 5

POINT I

    PLAINTIFFS' FEDERAL CLAIMS ARE TIME-BARRED AND AMERICAN PIPE
    TOLLING IS INAPPLICABLE. ................................................................................ 5

        A. The Statute of Limitations on Plaintiffs' Claims Expired on November 4, 2023. ...... 5

            1. The <u>Sow</u> FAC defined class members as individuals who were at minimum
            arrested. ................................................................................................ 8

POINT II

    ANY CLAIMS ARISING FROM ARRESTS OUTSIDE OF THE FINAL <u>SOW</u>
    LOCATIONS ARE PRECLUDED AND SHOULD BE FORECLOSED FROM
    RELIANCE ON <u>AMERICAN PIPE</u>. ........................................................................ 9

        A. Plaintiffs Silver and Ndiayes' Claims Are Barred By Res Judicata Because They Are in
        Privity with the <u>Sow</u> Class. ................................................................................ 9

        B. The <u>Sow</u> Settlement Released Plaintiff Silver and Ndiayes' Claims. ........................... 11

        C. At Minimum, The Court Should Decline to Apply <u>American Pipe</u> Tolling to the
        Voluntarily Dismissed Claims. ........................................................................... 13

POINT III

    PLAINTIFFS' CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE
    DISMISSED. ..................................................................................................... 14

    POINT IV

    PLAINTIFFS' <u>MONELL</u> CLAIM FAILS. ................................................................. 16

        A. Plaintiffs' Monell Claim Fails Because There is No Surviving Claim Against Any of
        the Individual Defendants. ................................................................................ 16

        B. Plaintiffs Fail to Plead a Monell Claim. ............................................................. 17

POINT V

PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED FOR FAILURE TO COMPLY WITH GENERAL MUNICIPAL LAW. ............................................................... 20

CONCLUSION.................................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

Allen v. McCurry, 449 U.S. 90, 94 (1980) ............................................................... 10

Alpert's Newspaper Delivery, Inc. v. The N.Y. Times Co.,

    876 F.2d 266, 270 (2d Cir. 1989).................................................................... 11

American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974)........................................ 1, 6

An v. City of N.Y., No. 16 Civ. 5381 (LGS)

    2017 U.S. Dist. LEXIS 84364, at *8 (S.D.N.Y. June 1, 2017)........................................ 18

Aquino v. City of N.Y., No. 16 Civ. 1577 (GHW)

    2017 U.S. Dist. LEXIS 10436, at *7-8 (S.D.N.Y. Jan. 25, 2017) ................................... 17

Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) ................................................................. 4, 16

Askins v. Doe, 727 F.3d 248, 253-54 (2d Cir. 2013) ............................................................ 16

Bd. of Trs. v. BNY Mellon, N.A., No. 11 Civ. 6345 (RJS)

    2012 U.S. Dist. LEXIS 132724 at *10 (S.D.N.Y. Sept. 10, 2012).................................... 8

Behrens v. JPMorgan Chase Bank N.A., No. 16 Civ. 5508 (VSB)

    2019 U.S. Dist. LEXIS 55952, at *24 (S.D.N.Y. Mar. 31, 2019) ................................. 7, 9

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007) ........................................................ 4

Berrios v. N.Y.C. Hous. Auth., 564 F.3d 130, 134 (2d Cir. 2009)........................................ 15

C.Q. v. N.Y.C. Dep't of Educ., No. 21 Civ. 3 (JGK)

    2024 U.S. Dist. LEXIS 219704, at *16 (S.D.N.Y. Dec. 3, 2024)....................................... 5

Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 345 (2d Cir. 1995)................. 10

Corines v. Cnty of Westchester, No. 22 Civ. 5179 (KMK)

    2024 U.S. Dist. LEXIS 54050, at *9 (S.D.N.Y. Mar. 25, 2024) ....................................... 5

Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 353-54 (1983) .................................... 7, 14

Doe v. State Univ. of N.Y. Purchase Coll., 617 F. Supp. 3d 195, 208 (S.D.N.Y. 2022) ......... 5

EDP Med. Computer Sys., Inc. v. United States, 480 F.3d 621, 624 (2d Cir. 2007) ............ 10

Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 176 n.13 (1974) ................................................ 7

Esquire Trade & Finance, Inc. v. CBQ, Inc., 562 F.3d 516, 520 (2d Cir. 2009).............. 10, 14

Favourite Ltd. v. Cico, 42 N.Y.3d 250, 253 (2024)..................................................... 5

Galgano v. Cnty. of Putnam, No. 16 Civ 3572 (KMK)

   2020 U.S. Dist. LEXIS 116682, at *30-31 (S.D.N.Y. July 2, 2020)................................... 18

Hansberry v. Lee, 311 U.S. 32, 43 (1940) ............................................................ 12

Hardy v. N.Y.C. Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999).......................... 21

Horvath v. Daniel, 423 F. Supp.2d 421, 423 (S.D.N.Y. 2006)................................................ 21

Sierra, et al., v. City of New York, et al., No. 20 Civ. 10291 (CM) (GWG)

   (S.D.N.Y. 2021) ........................................................................................ 6

In re UiPath, Inc. Sec. Litig., 755 F. Supp. 3d 498, at *37 (S.D.N.Y. 2024) ......................... 7

Iowa Pub. Employees' Ret. Sys. V. MF Global, Ltd., 620 F.3d 137, 145 (2d Cir. 2010)........ 4

LaTrieste Restaurant and Cabaret, Inc. v. Vill. of Port Chester,

   40 F.3d 587, 591 (2d Cir. 1994)..................................................................... 10

Matter of Jaime v. City of N.Y., 41 N.Y.3d 531, 537 (2024)................................................... 5

McLaughlin v. Snowlift, Inc., 214 A.D.3d 720, 721 (App. Div. 2023)) ................................... 6

Mercado v. City of N.Y., No. 8 Civv. 2855 (BSJ) (HP)

   2011 U.S. Dist. LEXIS 140430, at *23 (S.D.N.Y. Dec. 5, 2011)................................... 18

Modos Chofetz Chaim, Inc. v. RBS Citizens, N.A., 14 F.Supp.3d 191, 209 (S.D.N.Y. 2014) 4

Monahan v. City of N.Y., No. 20 Civ. 2610 (PKC)

   2022 U.S. Dist. LEXIS 59124, at *52 (S.D.N.Y. March 30, 2022)................................ 20

Monahan v. N.Y.C Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000) ................................... 10

Monell v. Dep't of Social Servs., 436 U.S. 658, 663 n.7 (1978)....................................... 17, 18

Monroe Cnty Emps.' Ret. Sys. v. YPF Sociedad Anonima,

    980 F. Supp. 2d 487, 488, 491 (S.D.N.Y. 2013)................................................. 14

Newton v. City of N.Y., 779 F.3d 140, 152 (2d Cir. 2015)............................................. 18, 19

Noskov v. Roth, No. 19 Civ. 7431 (RA)

    2020. U.S. Dist. LEXIS 126411, *9-10 (S.D.N.Y. July 17, 2020)..................................... 4

Nwoye v. Obama, No. 23-1178-CV

    2024 U.S. App. LEXIS 5143, at *2 (2d Cir. Mar. 4, 2024)................................................ 5

Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997) ..................................................... 5

Owens v. Okure, 488 U.S. 235, 251 (1999)................................................................. 5

Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998) .......................... 4, 13

Paribas v. N.M. State Inv. Council, No. 24-635-CV

    2025 U.S. App. LEXIS 12181, at *9 (2d Cir. May 20, 2025) .............................. 11, 12, 13

Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) ................................. 17

Rattner v. Planning Comm'n of Vill. of Pleasantville,

156 A.D.2d 521, 526 (2d Dep't 1989).................................................................. 21

Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991) ...................................... 19

Richards v. Jefferson Cnty., 517 U.S. 793, 801-802 ................................................ 12

Roper v. City of N.Y., No. 15 Civ. 8899 (PAE) (GWG)

    2017 U.S. Dist. LEXIS 14918, at *2-3 (S.D.N.Y. Jan. 25, 2017) .................................... 16

Ruiz v. Comm'r of Dep't of Trans. of the City of N. Y., 858 F.2d 898 (2d Cir. 1988).......... 11

Saiti v. Century Mgmt., No. 23 Civ. 9591 (JPO)

    2025 U.S. Dist. LEXIS 31544, at *3 (S.D.N.Y. Feb. 21, 2025)......................................... 4

Segal v. City of N.Y., 459 F.3d 207, 219 (2d Cir. 2006)......................................... 18

Shak v. JPMorgan Chase & Co., 156 F.Supp.3d 462, 474 (S.D.N.Y. 2016)........................... 4

Smith v. Bayer Corp., 564 U.S. 299, 315 (2011)................................................... 12

Sow, et al v. City of New York, et al., 21 Civ. 00533 (CM) (GWG) (S.D.N.Y 2021) ............ 1

Spavone v. N.Y. State Dep't of Corr. Serv., 719 F.3d 127, 135 (2d Cir. 2013) ..................... 15

Tangreti v. Bachmann, 983 F.3d 609, 620 (2d Cir. 2020). .................................................. 16

Taylor v. Sturgell, 553 U.S. 880, 900 ................................................................................. 12

Thea v. Kleinhandler, 807 F.3d 492, 501 (2d Cir. 2015 ....................................................... 4

Thompson v. Cnty. of Franklin, 15 F.3d 245, 253 (2d Cir. 1994) .......................................... 4

Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 106 (2d Cir. 2005) ........... 11, 12, 13

**Statutes**

42 U.S.C. § 1983 .................................................................................................................. 1

**Other Authorities**

Executive Order (A. Cuomo) No. 202.8 (9 NYCRR 8.202.8) ................................................ 5

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 3

## <u>PRELIMINARY STATEMENT</u>

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 and corresponding state law, alleging, *inter alia*, claims of false arrest, excessive force, First Amendment retaliation, and municipal liability in connection with plaintiffs' arrests and/or interactions[1] with New York City Police Department ("NYPD") officers in 2020. Defendants City of New York ("the City"), former Mayor Bill De Blasio, former Police Commissioner Dermot Shea, and former Chief of Department Terence Monahan (hereinafter "Defendants") now move to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

All of Plaintiffs' claims arise from incidents occurring between May 29, 2020 and September 17, 2020. The instant action was not filed until February 11, 2025—well after the three-year statute of limitations ran on the 42 U.S.C. § 1983 claims and corresponding state causes of action. Although Plaintiffs could have availed themselves of the approximately six-month tolling from Governor Andrew Cuomo's executive orders in response to the Covid-19 pandemic, they did not. Plaintiffs instead rely on <u>American Pipe & Construction Co. v. Utah</u>, 414 U.S. 538 (1974), to argue that the filing of the class action <u>Sow, et al v. City of New York, et al.</u>, No. 21 Civ. 00533 (CM) (GWG) (S.D.N.Y. 2021)  (hereinafter "<u>Sow</u>"), tolled the applicable statute of limitations because they were members of the putative class, although outside of the class as certified. However, based on the face of the Complaint, it is clear that the principles outlined in <u>American Pipe</u> do not apply to Plaintiffs because they (i) were not in the <u>Sow</u> putative class so as to qualify for tolling under <u>American Pipe</u>; (ii) are bound by the <u>Sow</u> settlement agreement under res judicata and the adequate representation exception to non-party preclusion; and/or (iii) had their claims

---

[1] The facts alleged in the Complaint are accepted as true herein solely for the purposes of this motion.

voluntarily dismissed with prejudice so that their claims, at minimum, were rendered to a legal nullity.

Plaintiffs' claims against the individual defendants are barred by res judicata and collateral estoppel. Plaintiffs' municipal liability claims against the City should also be dismissed because there is no underlying claim against a municipal actor, the alleged constitutional violations are time-barred and precluded, and, in any event, Plaintiffs fail to adequately allege a municipal policy or practice that led to their asserted deprivation of rights. Finally, Plaintiffs' state law claims fail because they did not comply with prerequisites under the New York General Municipal Law, and even if they had, their claims are time-barred.

## RELEVANT STATEMENT OF FACTS & PROCEDURAL HISTORY

On January 21, 2021, Adama Sow and others filed a putative class action on behalf of individuals who allege they were falsely arrested or suffered physical and emotional harm during protests related to the death of George Floyd and Black Lives Matter. Sow Complaint dated January 21, 2021, 21 Civ. 00533 (CM) (GWG), ECF No. 1, at ¶ 444; Compl. at ¶18. On March 6, 2021, the First Amended Complaint was filed, which revised the proposed class to "(a) all persons who were targeted for their First Amendment protected activity including being, *inter alia*, unlawfully detained and/or arrested without fair warning or ability to disperse, subjected to excessive force, and/or subjected to unreasonably lengthy and unsafe custodial arrest processing during the New York City protest marches in opposition to police misconduct and in support of police reform from May 28, 2020 through no earlier than November 2020." Sow, First Amended Complaint dated March 5, 2021 (hereinafter "Sow FAC"), 21 Civ. 00533 (CM) (GWG), ECF No. 4, at ¶510; Compl. at ¶¶154-165. On August 23, 2023, the Amended Stipulation of Settlement and Order (hereinafter "Sow Amended Stipulation"), as negotiated by the parties, was accepted by the

court. <u>Sow</u>, ECF No. 176. The class was certified on February 22, 2024. <u>Sow</u>, Order Granting Plaintiffs' Motion for Final Approval of Class Action Settlement (hereinafter "<u>Sow</u> Final Approval Order"), ECF No. 196; <u>see also Sow</u>, Amended Order Granting Plaintiffs' Motion for Final Approval of Class Action Settlement dated March 5, 2024 (hereinafter "<u>Sow</u> Amended Final Approval Order"), ECF No. 199. Plaintiffs' counsel in this matter are also class counsel in <u>Sow</u>. <u>See Sow</u> FAC at ¶60; <u>Sow</u> Amended Final Approval Order ¶2; <u>Sow</u> Final Approval Order ¶2; <u>Sow</u> Amended Stipulation at p. 31.

On February 11, 2025, Plaintiffs filed the Complaint herein. Plaintiffs initiated the instant action, alleging violations of their constitutional rights in connection with incidents at protests between May 29, 2020 and September 17, 2020. <u>See</u> Complaint ("Compl.) at ¶¶ 129, 147, 168, 195, 227. Plaintiffs Olukayode, Moran, DeVlieger, and Henderson allege that they were subjected to excessive force. <u>See id.</u> ¶¶133-139, 154-157, 232-234. Plaintiffs Silver and Ndiaye allege they were arrested and subjected to excessive force. <u>See id.</u> ¶¶180- 187, 204-218. On April 21, 2025, Plaintiff Henderson voluntarily dismissed his claims from this action without prejudice. <u>See</u> ECF No. 12.[2] Defendants now move this Court for an order dismissing the Complaint in its entirety pursuant to Rule 12(b)(6).

## <u>STANDARD OF REVIEW</u>

Rule 12(b)(6) allows for a pleading to be dismissed when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim" that, if accepted as true, "allows the court to draw the reasonable inference that the defendant is liable for the

---

[2] As Plaintiff Henderson's claims have been withdrawn, this motion does not address them outright, but his claims should be dismissed with prejudice on the merits for the same reasons argued to advance the dismissal of Plaintiff Olukayode, Moran, and DeVliegers' claims.

misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). The factual allegations in the complaint must be more than speculative and must show the grounds upon which a plaintiff is entitled to relief beyond "labels and conclusions, and a formulaic recitation of a cause of action's elements." Twombly, 550 U.S. at 555. The pleading must include facts that articulate more than "a sheer possibility that a defendant has acted unlawfully." Ashcroft, 556 U.S. at 678.

Finally, affirmative defenses may be raised in a pre-answer Rule 12(b)(6) motion if "the defense appears on the face of the complaint." Iowa Pub. Employees' Ret. Sys. V. MF Global, Ltd., 620 F.3d 137, 145 (2d Cir. 2010) (citing Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998)). This includes the defense that the statute of limitations has expired. See Noskov v. Roth, No. 19 Civ. 7431 (RA), 2020. U.S. Dist. LEXIS 126411, *9-10 (S.D.N.Y. July 17, 2020) (citing Thea v. Kleinhandler, 807 F.3d 492, 501 (2d Cir. 2015). "Dismissing claims on statute of limitations grounds at the complaint stage 'is appropriate only if a complaint clearly shows the claim is out of time.'" Id. at *10 (citing Shak v. JPMorgan Chase & Co., 156 F.Supp.3d 462, 474 (S.D.N.Y. 2016)  see also Modos Chofetz Chaim, Inc. v. RBS Citizens, N.A., 14 F.Supp.3d 191, 209 (S.D.N.Y. 2014) ("Because the defendants bear the burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-answer motion to dismiss on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has run.") (alterations internal quotation marks, and citation omitted). Additionally, "'[r]es judicata challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)' of the Federal Rules of Civil Procedure." Saiti v. Century Mgmt., No. 23 Civ. 9591 (JPO), 2025 U.S. Dist. LEXIS 31544, at *3 (S.D.N.Y. Feb. 21, 2025) (quoting Thompson v. Cnty. of Franklin, 15 F.3d 245, 253 (2d Cir. 1994).

**ARGUMENT**

**POINT I**

**PLAINTIFFS' FEDERAL CLAIMS ARE TIME-BARRED AND AMERICAN PIPE TOLLING IS INAPPLICABLE.**

**A.  The Statute of Limitations on Plaintiffs' Claims Expired on November 4, 2023.**

The statute of limitations for a § 1983 civil rights action in New York is three years. See Owens v. Okure, 488 U.S. 235, 251 (1999). Such claims accrue "when the plaintiff knows or has reason to know of the injury which is the basis for his action." Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997) (citations omitted). In the instant matter, Plaintiffs' false arrest, first amendment, excessive force, first amendment retaliation, due process, equal protection, and selective enforcement claims accrued on or about the date of the alleged incidents, i.e., between May 29, 2020 and September 17, 2020. During this time, former Governor Andrew Cuomo issued Executive Order No. 202.8 on March 20, 2020, which suspended, *inter alia*, the running of civil statutes of limitations. Executive Order (A. Cuomo) No. 202.8 (9 NYCRR 8.202.8) was ultimately extended and determined to toll applicable deadlines and statutes of limitations in New York. See Favourite Ltd. v. Cico, 42 N.Y.3d 250, 253 (2024); Matter of Jaime v. City of N.Y., 41 N.Y.3d 531, 537 (2024). In federal cases where New York State law supplies the statute of limitations, such as 42 U.S.C. § 1983 cases, courts in the Southern District of New York have applied the tolling provisions of the state-law COVID-19 Executive Orders, which is consistent with decisions affirmed by the Second Circuit. See, e.g., C.Q. v. N.Y.C. Dep't of Educ., 21 Civ. 3 (JGK), 2024 U.S. Dist. LEXIS 219704, at *16 (S.D.N.Y. Dec. 3, 2024); Corines v. Cnty of Westchester, No. 22 Civ.  5179 (KMK), 2024 U.S. Dist. LEXIS 54050, at *9 (S.D.N.Y. Mar. 25, 2024); Doe v. State Univ. of N.Y. Purchase Coll., 617 F. Supp. 3d 195, 208 (S.D.N.Y. 2022); Nwoye v. Obama, 23-1178-CV, 2024 U.S. App. LEXIS 5143, at *2 (2d Cir. Mar. 4, 2024) (affirming tolling of claims

between March 20, 2020 and November 3, 2020) (citing <u>McLaughlin v. Snowlift, Inc.</u>, 214 A.D.3d 720, 721 (App. Div. 2023)).

Factoring in the tolling period established by the COVID-19 Executive Orders, Plaintiffs' § 1983 claims accrued on or about November 4, 2020, the date the Executive Orders expired. Accordingly, the statute of limitations on these claims ran on November 4, 2023. Plaintiffs, however, did not file the instant case until February 11, 2025.Therefore, although Plaintiffs received the benefit of the COVID-19 tolling provision, they did not timely file their federal claims and they are time-barred.

### B. Plaintiffs Olukayode, Moran, And DeVlieger Were Not Members Of The Sow Class So As To Be Entitled To American Pipe Tolling.

Plaintiffs assert that the statute of limitations on their claims were tolled by the filing of putative class actions concerning protests throughout New York City following the death of George Floyd pursuant to <u>American Pipe & Construction Co. v. Utah</u>, 414 U.S. 538 (1974). Compl. at ¶15-22. Although multiple proposed class actions were filed following these protests in 2020, Plaintiffs cite two in particular as relevant, <u>Sow</u> and <u>Sierra, et al., v. City of New York, et al.</u>, 20 Civ. 10291 (CM) (GWG) (S.D.N.Y. 2021)  (hereinafter "<u>Sierra</u>").[3]

Generally, under <u>American Pipe</u>, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." <u>American Pipe</u>, 414 U.S. at 554. The tolling of the statute of limitations applied both in cases where class certification was denied, and where class certification was granted. <u>See, e.g.</u>, <u>Crown, Cork & Seal Co. v. Parker</u>, 462 U.S.

---

[3] Plaintiffs incorporate by reference the factual allegations of multiple class action and non-class action cases. <u>See</u> Compl. at ¶¶15 n.2. Despite the reference to <u>Sierra</u>, Plaintiffs cite to <u>Sierra</u> primarily for background information regarding NYPD's policing practices and do not plead any attempts at joining that matter as class members. Accordingly, the arguments herein will focus on <u>Sow</u>.

345, 353-54 (1983) (applying tolling to class members filing separate actions after class certification was denied); Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 176 n.13 (1974) (stating the statute of limitations were tolled for members who opted out after the class was certified). "This tolling benefit is afforded to active participants in the litigation as well as those who were unaware of the proceedings." In re UiPath, Inc. Sec. Litig., 755 F. Supp. 3d 498, at *37 (S.D.N.Y. 2024).

There is no question that Plaintiffs were not members of the class ultimately certified in Sow, which defined the class members were individuals arrested, or arrested at 18 specified locations within certain geographic boundaries. See Compl. at ¶21; Amended Final Approval Order at ¶2 (referencing Amended Stipulation at ¶ 32); ECF No. 19. Here, Plaintiffs Olukayode, Moran, and DeVlieger, were not arrested at all, and Plaintiffs Silver and Ndiaye were not arrested within the parameters of the designated 18 dates and corresponding locations. Plaintiffs' claims for the tolling of the statute of limitations pursuant to American Pipe relies on their purported membership in the Sow proposed class. See Compl. at ¶¶15-22. The Sow FAC outlined the proposed class as:

> (a) all persons who were targeted for their First Amendment protected activity including being, inter alia, unlawfully detained and/or arrested without fair warning or ability to disperse, subjected to excessive force, and/or subjected to unreasonably lengthy and unsafe custodial arrest processing during the New York City protest marches in opposition to police misconduct and in support of police reform from May 28, 2020 through no earlier than November, 2020 (the "Protests"); (b) all persons who have been or will be unlawfully detained and/or arrested without fair warning or ability to disperse since May 28, 2020, pursuant to the NYPD's policy, practice, and/or custom of, without legal justification, conducting retaliatory arrests and detentions of individuals protesting in opposition to police misconduct and in support of police reform.

Sow FAC at ¶510. However, "[c]lass tolling does not apply if a plaintiff 'never could have been part of the putative class'" in the prior class action. Behrens v. JPMorgan Chase Bank N.A., No. 16 Civ. 5508 (VSB), 2019 U.S. Dist. LEXIS 55952, at *24 (S.D.N.Y. Mar. 31, 2019) (citing Bd.

of Trs. v. BNY Mellon, N.A., No. 11 Civ. 6345 (RJS), 2012 U.S. Dist. LEXIS 132724, 2012 WL

3930112, at *10 (S.D.N.Y. Sept. 10, 2012)).

      1.  <u>The Sow FAC defined class members as individuals who were at minimum arrested.</u>

      Plaintiffs Olukayode, Moran, and DeVliegers cannot rely on <u>American Pipe</u> tolling because

they only allege that they were subjected to excessive force without being arrested, which was

never part of the <u>Sow</u> FAC putative class definition. <u>See</u> Compl. ¶¶133-139, 154-157, 232-234;

<u>Sow</u> FAC ¶510. First, in responding to Defendants' request for a briefing schedule, Plaintiffs

(through the same counsel that signed the <u>Sow</u> FAC proposed class definition), explicitly defined

the proposed class as individuals "arrested at protests in May, June, and September 2020" and who

"were targeted for protesting." <u>See</u> ECF No. 19 at 3. Thus, by their own admission, Plaintiffs

Olukayode, Moran, and DeVlieger could not have been in the <u>Sow</u> proposed class because they

were not arrested. <u>See id.</u>

      Secondly, any ambiguities as to the <u>Sow</u> FAC's proposed class definition are readily

resolved by an examination of the rest of the class allegations. Numerous paragraphs identified as

relating to the allegations common to the named Plaintiffs, and/or all class members, support the

position that the proposed <u>Sow</u> class was never intended to represent the interests of individuals

who were not, at minimum, arrested. <u>See</u> <u>Sow</u> FAC ¶514 ("The Named Plaintiffs [were] the

victims of excessive and unreasonable force *in the course of these unconstitutional arrests.*")

(emphasis added); ¶517 ("Like other members the Class, the Named Plaintiffs were subject to

arrests in violation of their First Amendment rights, excessive use of force, and unconditional

conditions of confinement."); ¶513 ("The named Plaintiffs *and all Class Members* were and will

be victimized by these same retaliatory policies of arresting protestors against police brutality

without legal justification.") (emphasis added)). Thus, it is clear that the <u>Sow</u> FAC sought to certify a class of individuals who were at least arrested, during specific types of protests.

Accordingly, because Plaintiffs Olukayode, Moran, and DeVlieger were not arrested they could never have been in the <u>Sow</u> putative class and, therefore, they cannot rely on the <u>American Pipe</u> tolling. As such, their claims –which expired on November 4, 2023— are time-barred. <u>See</u> <u>Behrens</u>, 2019 U.S. Dist. LEXIS 55952, at *24.

## POINT II

**ANY CLAIMS ARISING FROM ARRESTS OUTSIDE OF THE FINAL <u>SOW</u> LOCATIONS ARE PRECLUDED AND SHOULD BE FORECLOSED FROM RELIANCE ON <u>AMERICAN PIPE</u>.**

Both Plaintiffs Silver and Ndiaye allege they were arrested and subjected to excessive force while at protests in May and September of 2020. See Both Plaintiffs' arrests fell outside of the final 18 locations designated for the <u>Sow</u> settlement class. <u>See</u> <u>id.</u> ¶¶170, 195. Even assuming Plaintiffs Silver and Ndiaye were members of the <u>Sow</u> "putative" class by virtue of having been, *inter alia*, arrested, pursuant to the <u>Sow</u> Settlement Agreement and Stipulation, their claims were voluntarily dismissed with prejudice by class counsel (who is Plaintiffs' counsel here). The effect of this voluntary dismissal with prejudice is that Plaintiffs Silver and Ndiaye's arrest claims are barred under res judicata and should be precluded in accordance with the requirements of due process; or, at minimum, should foreclose any reliance on the tolling provisions of <u>American Pipe</u>.

### A. Plaintiffs Silver and Ndiayes' Claims Are Barred By Res Judicata Because They Are in Privity with the <u>Sow</u> Class.

"The doctrine of res judicata, or claim preclusion, holds that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" <u>Monahan v. N.Y.C Dep't of Corr.</u>, 214 F.3d 275, 284 (2d Cir. 2000)

(citing <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980)). Thus, res judicata "bars later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." <u>Esquire Trade & Finance, Inc. v. CBQ, Inc.</u>, 562 F.3d 516, 520 (2d Cir. 2009) (quoting <u>EDP Med. Computer Sys., Inc. v. United States</u>, 480 F.3d 621, 624 (2d Cir. 2007)). The party asserting res judicata bears the burden of proving these elements. <u>Monahan</u>, 214 F.3d at 285. Here, the first, second, and fourth factors are clearly met. Plaintiffs Silver and Ndiyaes' claims were voluntarily dismissed, which constitutes a "final judgment on the merits." <u>Chase Manhattan Bank, N.A. v. Celotex Corp.</u>, 56 F.3d 343, 345 (2d Cir. 1995) ("A voluntary dismissal with prejudice is an adjudication on the merits for purposes of res judicata [ . . .]"). The dismissal was approved in the Southern District of New York, a court of competent jurisdiction. Finally, the causes of action in this Complaint are identical to those in <u>Sow</u>. <u>Compare</u> Sow FAC Causes of Action <u>with</u> Complaint Causes of Action.

Turning to the third factor, Plaintiffs Silver and Ndiaye are in privity with the <u>Sow</u> class. "As a general proposition, *res judicata* requires an identicality, or privity, of the plaintiffs and defendants in the initial and subsequent actions for preclusion to apply." <u>See</u> <u>LaTrieste Restaurant and Cabaret, Inc. v. Vill. of Port Chester</u>, 40 F.3d 587, 591 (2d Cir. 1994). "This rule, however, is not strictly imposed where the party against whom claim preclusion is sought has, in essence, already received his or her day in court, and the application of *res judicata* would not alter this conclusion." <u>See</u> <u>Alpert's Newspaper Delivery, Inc. v. The N.Y. Times Co.</u>, 876 F.2d 266, 270 (2d Cir. 1989) (noting that literal privity is not required in order to obtain preclusive effect). Here, Plaintiffs Silver and Ndiaye's claims should be dismissed because they are in privity with the <u>Sow</u> settlement class.

10

In <u>Ruiz v. Commissioner of Department of Transportation of the City of New York</u>, the Second Circuit found privity existed for preclusion on a res judicata theory where two groups of truck drivers filed two suits, in state and federal court, challenging the same regulation, "were using the same attorneys in the two actions, the allegations were identical, and there were indications of an industry-wide strategy coordinated by counsel." <u>See id.</u> at 271. (discussing <u>Ruiz</u>, 858 F.2d 898 (2d Cir. 1988)). Here, Plaintiffs Silver and Ndiaye allege that they were arrested and subjected to force while at protests in May and September 2020, the allegations in the Complaint here are verbatim to those made in the <u>Sow</u> pleadings, brought against the same Defendants, and by the same attorneys.

Thus, because there is privity between Plaintiffs Silver and Ndiaye and the plaintiffs in <u>Sow</u>, and the other three factors to apply res judicata are readily met, Plaintiffs Silver and Ndiaye's claims arising outside of the final 18 designated locations were voluntarily withdrawn and barred under res judicata.

## C.  The <u>Sow</u> Settlement Released Plaintiffs Silver and Ndiayes' Claims.

"The identical factual predicate and adequate representation doctrines allow class action plaintiffs 'to release claims that share the same integral facts as settled claims, provided that the released claims are adequately represented prior to settlement.'" <u>Paribas v. N.M. State Inv. Council</u>, No. 24-635-cv, 2025 U.S. App. LEXIS 12181, at *9 (2d Cir. May 20, 2025) (quoting <u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,</u> 396 F.3d 96, 106 (2d Cir. 2005)).

Plaintiffs' claims share an identical factual predicate with <u>Sow</u>. "Specifically, under the identical factual predicate doctrine, '[c]lass actions may release claims, even if not pled, when such claims arise out of the same factual predicate as settled class claims.'" Importantly a "[c]lass action settlement 'may release not only those claims alleged in the complaint and before the court, but also claims which could have been alleged by reason of or in connection with any matter or

fact set forth or referred to in the complaint.'" Paribas, No. 24-635-CV, 2025 U.S. App. LEXIS 12181, at *10 (quoting Wal-Mart Stores, 396 F.3d at 108). The voluntarily dismissed claims within the Sow settlement, and the facts giving rise to the settled claims share the same set of integral facts with the claims Plaintiffs now seek to pursue. The operative Complaints in both actions allege that Plaintiffs were harmed, as a result of municipal policies regarding protests, with the same facts, within the same time periods, and the same relevant players. Paribas, No. 24-635-cv, 2025 U.S. App. LEXIS 12181, at *10.

Plaintiffs' claims were adequately represented in Sow. A party's representation of a nonparty is considered "adequate" for preclusion purposes "only if, at a minimum: (1) [t]he interests of the nonparty and her representative are aligned; and (2) either the party [in the first suit] understood herself to be acting in a representative capacity [of the nonparty] or the original court took care to protect the interests of the nonparty." Taylor v. Sturgell, 553 U.S. 880, 900 ("[A]dequate representation sometimes requires notice of the original suit to the persons alleged to have been represented, [which] [i]n the class-action context, these limitations are implemented by the procedural safeguards contained in Federal Rule of Civil Procedure 23.)" (citing Hansberry v. Lee, 311 U.S. 32, 43 (1940) and Richards v. Jefferson Cnty., 517 U.S. 793, 801-802; see also Smith v. Bayer Corp., 564 U.S. 299, 315 (2011) (analyzing Taylor, noting that "[w]e could hardly have been more clear that a "properly conducted class action," with binding effect on nonparties, can come about in federal courts in just one way--through the procedure set out in Rule 23."). "'Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim.…'" Paribas, 2025 U.S. App. LEXIS 12181, at *10-11 (quoting Wal-Mart Stores, Inc., 396 F.3d at 108)).

Here, the interests of Plaintiffs Silver and Ndiaye are squarely aligned with those of the Sow class as they seek to vindicate the same causes of action and rely on the exact same facts against the same defendant. Compare Compl. Statement of Facts, Parties, Causes of Action with Sow FAC at Statement of Facts, Parties, Causes of Action. Moreover, the Sow FAC details that the named plaintiffs expressly sought to represent the interests of the proposed class seeking damages for arrests made during the George Floyd protests, which includes Plaintiffs Silver and Ndiaye, suggesting their interests were indeed considered in the prior action. See Sow FAC ¶¶510-514. That the Sow class representatives, in negotiating settlement on behalf of the putative class prior to certification, elected to withdraw Plaintiffs' claims with prejudice indicates they indeed understood themselves to have the authority to do so. See Paribas, 2025 U.S. App. LEXIS 12181, at *11 ("The fact that they did not assert those claims is not dispositive; in settlements, "[e]ach side gives up a number of things," and the mere fact that class plaintiffs may have 'left significant claims on the table' does not mandate a finding of inadequate representation.") (quoting Wal-Mart Stores, Inc., 396 F.3d, at 109-13).

Accordingly, as Plaintiffs Silver and Ndiaye's claims are precluded because their interests were adequately represented in Sow, enforcing the voluntary dismissal of their claims comports with due process, and their claims should be dismissed.

### D. At Minimum, The Court Should Decline to Apply American Pipe Tolling to the Voluntarily Dismissed Claims.

At a minimum, the Court should decline to extend the tolling provisions under American Pipe to Plaintiffs Silver and Ndiayes' claims in light of the fact they were voluntarily dismissed with prejudice.

The Second Circuit has yet to decide whether "American Pipe tolling applies . . . where claims are dismissed voluntarily." See Monroe Cnty Emps.' Ret. Sys. v. YPF Sociedad Anonima,

980 F. Supp. 2d 487, 488, 491 (S.D.N.Y. 2013). However, district courts within this circuit who have held that tolling does apply to voluntarily dismissed claims has only been analyzed in the context of an entire suit being dismissed, or where claims have been dismissed by the filing of an amended pleading, not where, as here, claims are dismissed as a part of a settlement agreement and with prejudice pursuant to Federal Rule of Civil Procedure 41(a). See id. (collecting cases).

Here, allowing Plaintiffs to bring the very claims that their current counsel previously agreed to dismiss with prejudice as a part of settlement negotiations, is prejudicial to Defendants and causes "unfair surprise" contrary to the policy considerations underpinning American Pipe tolling and class actions generally. See Crown, Cork & Seal, 462 U.S. at 353 (holding that the statute of limitations *may* be tolled so long as there is no potential that doing so will force Defendants to face any unfair surprises).

Accordingly, American Pipe tolling should not extend to Plaintiffs Silver and Ndiayes' claims, which were voluntarily dismissed as a part of the Sow settlement agreement.

## POINT III

### PLAINTIFFS' CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED.

#### A. All But One of Plaintiffs' Claims Against the Individual Defendants Are Plainly Barred by Res Judicata.

As discussed *supra*, res judicata "bars later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." Esquire Trade & Finance, Inc., at 520. Here, the first and second elements are met because Plaintiffs' instant claims are verbatim to those alleged in the Sow FAC, which were dismissed for failure to state a claim specifically regarding the constitutionality of the curfew order put in place by former Mayor DeBlasio; former

Police Commission Shea's lack of personal involvement in any of the protests detailed in the Complaint; former NYPD Chief Monahan's lack of involvement in any protests beyond those on May 29, 2020 and June 4, 2020; and suit in the official capacity against the individual defendants. See Sow Decision and Order, ECF No. 116; Berrios v. N.Y.C. Hous. Auth., 564 F.3d 130, 134 (2d Cir. 2009) (citations omitted) ("For purposes of the doctrine of res judicata, a dismissal for failure to state a claim is a final judgment on the merits."). As to the third factor, all Plaintiffs are in privity with the Sow putative class as detailed in the FAC insofar as they assert the same claims based on the same facts against the individual Defendants that were dismissed on the merits. See Sow Decision and Order, ECF No. 116. Finally, as to the fourth factor, the causes of action asserted here are identical to those in the Sow pleadings. Thus, all four elements for res judicata apply to all of Plaintiffs' claims against the individual Defendants, except for one against Defendant DeBalsio. Moreover, should the Court decline to apply res judicata, the dismissal of the above-referenced claims in Sow at the motion to dismiss stage should be at bottom instructive to their survival here, as they are based on the same facts previously determined to be insufficient to state a claim.

### B. Plaintiffs Fail to Allege Personal Involvement.

"To state a claim under Section 1983, a plaintiff must also allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation." See Spavone v. N.Y. State Dep't of Corr. Serv., 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted)). "A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights." See Ashcroft, 556 U.S. at 676. "Rather,

[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official[.]" Tangreti v. Bachmann, 983 F.3d 609, 620 (2d Cir. 2020).

Here, nothing in the Complaint suggests that any individual Defendant was personally involved in any of Plaintiffs' individual experiences detailed in the Complaint. The only claim against any individual defendant that is not plainly barred is Plaintiff Olukayode's claim against DeBlasio. See Sow Decision and Order, ECF No. 116. However, the Complaint fails to state a claim against DeBlasio, as he is not alleged to have been personally involved in the May 29, 2020 protest giving rise to Plaintiff Olukayode's claims. Relatedly, even if the other Plaintiffs' claims against Defendants Monahan, Shea, and DeBlasio were not barred on res judicata grounds, they must be dismissed because their personal involvement is not plead. Thus, any claims against the individual Defendants should be dismissed due to lack of personal involvement.

## POINT IV

## PLAINTIFFS' MONELL CLAIM FAILS.

### A. Plaintiffs' Monell Claim Fails Because There is No Surviving Claim Against Any of the Individual Defendants.

"In a lawsuit containing a Monell claim, if the plaintiff cannot show that his or her constitutional rights were violated by any individual defendants, the Monell claim will also fail." Roper v. City of N.Y., No. 15 Civ. 8899(PAE) (GWG), 2017 U.S. Dist. LEXIS 14918, at *2-3 (S.D.N.Y. Jan. 25, 2017) (citing Askins v. Doe, 727 F.3d 248, 253-54 (2d Cir. 2013) ("[T]he plaintiffs' failure to secure a judgment against the individual actors would . . . preclude a judgment against the municipality if the ruling . . . resulted from the plaintiff's failure to show that they committed the alleged tort.") (emphasis omitted). As detailed *supra*, the Complaint does not claim that the individual Defendants were in any way involved in the incidents giving rise to Plaintiffs'

interactions with the police. As no claim against the individual Defendants can survive, for the reasons discussed *supra* Point III, any <u>Monell</u> claim must similarly fail. <u>See</u> <u>id.</u>

**B.  Plaintiffs Fail to Plead a <u>Monell</u> Claim.**

In order to hold the City of New York liable under 42 U.S.C. § 1983 for an alleged constitutional violation, Plaintiffs must plead: "(1) an official policy or custom that (2) cause[d] [plaintiff] to be subjected to (3) a denial of a constitutional right." <u>See</u> <u>Aquino v. City of N.Y.</u>, 16 Civ. 1577 (GHW), 2017 U.S. Dist. LEXIS 10436, at *7-8 (S.D.N.Y. Jan. 25, 2017) (citing <u>Rodriguez v. Winski</u>, 973 F. Supp. 2d 411, 425 (S.D.N.Y. 2013)). A municipality may not be held liable under 42 U.S.C. § 1983 solely based on *respondeat superior*. <u>See</u> <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 663 n.7 (1978). Thus, a "municipality is not vicariously liable for its employees' actions under 42 U.S.C. § 1983." <u>Aquino</u>, 2017 U.S. Dist. LEXIS 10436 at *7. However, municipalities are "liable for 'their own illegal acts.'" <u>Id.</u> (citations omitted). Plaintiffs can satisfy the "policy or custom" prong required for municipal liability by alleging "the existence of (1) a formal policy, <u>see</u> <u>Monell</u>, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of [plaintiff's] rights, <u>see</u> <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 483-84 (1986) (plurality opinion); (3) a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policymakers, <u>see</u> <u>Monell</u>, 436 U.S. at 690-91; or (4) a failure to properly train or supervise municipal employees that amounts to 'deliberate indifference to the rights of those with whom municipal employees will come into contact.'" <u>Aquino</u>, 2017 U.S. Dist. LEXIS 10436 at *8. "To establish <u>Monell</u> liability, the causal link must be strong; that is, the policy must be the 'moving force' behind a constitutional violation." <u>Mercado v. City of N.Y.</u>, No. 8 Civ. 2855 (BSJ) (HP),

2011 U.S. Dist. LEXIS 140430, at *23 (S.D.N.Y. Dec. 5, 2011) (citing Monell, 436 U.S. at 691, 694).

A claim for municipal liability cannot stand where there is no causal connection between Plaintiffs alleged constitutional violation and the alleged unlawful custom. See, e.g., Segal v. City of N.Y., 459 F.3d 207, 219 (2d Cir. 2006) ("Monell does not provide a separate cause of action . . .; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."); Galgano v. Cnty. of Putnam, No. 16 Civ. 3572 (KMK), 2020 U.S. Dist. LEXIS 116682, at *30-31 (S.D.N.Y. July 2, 2020) (same). Stated differently, even where a plaintiff identifies an unconstitutional custom or practice, if that plaintiff's rights were not violated as a result of the application of that custom or practice the claim fails. See U.S. Const. Art. III, Section 2; An v. City of N.Y., No. 16 Civ. 5381 (LGS), 2017 U.S. Dist. LEXIS 84364, at *8 (S.D.N.Y. June 1, 2017) (holding that standing, including injury in fact, is required to bring Monell claim). Here, even if Plaintiffs' municipal liability claims were not based on time-barred acts, they still fail because they have not alleged the existence of a uniform, articulable NYPD policy or custom that, as a result of its application, caused the deprivation of their rights. See Newton v. City of N.Y., 779 F.3d 140, 152 (2d Cir. 2015). The factual distinctions between all of Plaintiffs' allegations cannot be used for the purposes of establishing a cohesive policy to which they were all allegedly subject to regarding "mass arrests" and/or "excessive force" at protests.

Plaintiffs' allegations regarding municipal liability center around the existence of unconstitutional "policies and practices" regarding arrests without fair warning, and protest-related arrests. See Compl. ¶¶317-379 (alleging "policies and practices" regarding arrests for curfew order and traffic violations, detentions, property seizures, and "Protesting Arrest Processing.").

However, only two Plaintiffs even claim they were arrested – importantly, neither were arrested for violations of the Mayoral COVID-19 curfew order, or pursuant to any provision of vehicle and traffic law, and only Plaintiff Silver, was taken a central arrest processing location so as to have been subject to any "protest arrest processing" policy (as opposed to Plaintiff Ndiaye, who was taken to a nearby precinct). Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991) ("Critically, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."); Newton, 779 F.3d at 152. Thus, no Plaintiff, even those arrested, allege that their rights were violated as a result of any of the purported municipal arrest policies/practices detailed in the Complaint.

Plaintiffs also claim the existence of a "policy and/or practice" of excessive force to control the speech of protestors, which fails to state a claim because in the allegations it is explicitly noted that the uses of force at issue were not sanctioned by NYPD training, protocol, and procedures, and thus cannot amount to an official policy. See Compl. at ¶43. Plaintiffs' conclusory allegation that there was any cognizable policy, official or unofficial, regarding the use of force based on perceived association and/or proximity to a specific group is not supported by any facts offered to detail Plaintiffs' individual experiences. The majority of the allegations regarding this "policy" detail instances of force in the context of mass-crowd control methods such as the use of pepper spray and the application of flex-cuffs. No Plaintiff claims pepper spray was used on them,[4] and only Plaintiff Silver claims he was placed in flex cuffs that were unreasonably tight. See id. at ¶¶307-316); Ricciuti, 941 F.2d at 123. Relatedly, to the extent Plaintiffs allege the existence of an unconstitutional policy, practice, or custom as it relates to "kettling" as a crowd control

---

[4] Except Plaintiff Henderson, who voluntarily withdrew his claims in this action. Even if he had not withdrawn his claims, one incident, as elaborated upon throughout this section, is insufficient to suggest the existence of a policy, practice, or custom.

mechanism, no Plaintiff alleges they were subject to "kettling." Compl. at ¶4; Newton, 779 F.3d at 152.

Finally, Plaintiffs' citations to other cases to support their purported Monell claim is inadequate. See, e.g., Compl. ¶¶ 269; 292; 312-314. "The fact that a civil action was filed and settled voluntarily is not evidence of liability on the part of the City, let alone evidence that the City was on notice of a claimed deficiency in the training it gave to NYPD members. Absent a finding of liability by a judge or jury, the existence of historical civil actions raising similar claims "establishes . . . that other individuals have plausibly alleged that they experienced similar violations of their constitutional rights as [plaintiff] alleges here, not that those violations actually occurred." Monahan v. City of N.Y., No. 20 Civ. 2610 (PKC), 2022 U.S. Dist. LEXIS 59124, at *52 (S.D.N.Y. March 30, 2022) (citations omitted). Thus, Plaintiffs do not plausibly plead their municipal liability claim by relying on citations to other, unrelated matters.

Accordingly, Plaintiffs fail to state municipal liability claims and they should be dismissed.

**POINT V**

**PLAINTIFFS' STATE LAW CLAIMS SHOULD
BE DISMISSED FOR FAILURE TO COMPLY
WITH GENERAL MUNICIPAL LAW.**

Plaintiffs' state law claims should be dismissed because they failed to plead, or even reference, compliance with the notice of claim requirement. Because federal courts apply state notice-of-claim statutes to state claims, the requirements of New York General Municipal Law ("N.Y. Gen. Mun. Law") § 50 must be met. See Hardy v. N.Y.C. Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999). N.Y. Gen. Mun. Law § 50-e requires that a Notice of Claim be filed within ninety days of the incident giving rise to the claim. N.Y. Gen. Mun. Law § 50-e (1)(a). "A plaintiff must plead in the complaint that: 1) the Notice of Claim was served; 2) at least thirty days has elapsed since the Notice of Claim was filed and before the complaint was filed; and 3) in that time

the defendant has neglected to or refused to adjust or to satisfy the claim." <u>Horvath v. Daniel</u>, 423 F. Supp.2d 421, 423 (S.D.N.Y. 2006); <u>see</u> N.Y. Gen. Mun. Law § 50-i (1). "Under §50-i, unless the plaintiff has complied with the Notice of Claim requirement the action cannot commence." <u>Horvath</u>, 423 F. Supp.2d at 423. Furthermore, "[n]otice of claim requirements are construed strictly by New York state courts." <u>Id.</u> (internal quotations omitted). Failure to demonstrate compliance with the Notice of Claim requirements is sufficient for the complaint to "be dismissed for failure to state a cause of action." <u>Id.</u> (internal quotations omitted). The burden is on the plaintiff to demonstrate compliance with the Notice of Claim requirements. <u>See</u> <u>Rattner v. Planning Comm'n of Vill. of Pleasantville</u>, 156 A.D.2d 521, 526 (2d Dep't 1989); <u>Horvath</u>, 423 F. Supp. 2d at 423. Fatally, it does not appear that Plaintiffs filed Notices of Claim. As this prerequisite was not met, both procedurally by failing to allege compliance in the pleading, and substantively by not filing notices of claim, the state law claims must be dismissed. Finally, Plaintiffs indicated they would withdraw their state law claims in their most recent letter responding to Defendants' application seeking a briefing schedule. <u>See</u> ECF No. 19 at 2 n. 3. Accordingly, Plaintiffs' state law claims should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their motion pursuant to Rule 12(b)(6), and dismiss the Complaint in its entirety, with prejudice, and for such other and further relief as the Court deems proper and just.[5]

Dated:          New York, NY
                July 25, 2025

                                        MURIEL GOODE-TRUFANT
                                        Corporation Counsel of the City of
                                        New York
                                        *Attorney for Defendants*
                                        New York, New York 10007
                                        (212) 356-2537

                        By:    /s/ *Zoe Reszytniak*
                                        Zoe Reszytniak
                                        *Assistant Corporation Counsel*
                                        Special Federal Litigation

CC:    **VIA ECF**
       Counsel of Record

---

[5] In accordance with Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that the total number of words in the foregoing Memorandum of Law, inclusive of point headings and footnotes, is 6,885. I have relied on the word count function of Microsoft Word to prepare this certification.