

July 28, 2025

Zoe Reszytniak, Esq.
Assistant Corporation Counsel
Muriel Goode-Trufant, Esq.
Corporation Counsel of the City of New York
100 Church Street, 3rd Floor
New York, NY 10007

By Electronic Mail

    Re:    Notice Under Rule 11
                <u>*Olukayode et al. v. City of New York, et al.*</u>, **25-cv-1232 (PAE)**

Dear Counsel:

As you know, I am co-counsel for Plaintiffs in the case above. Please find attached a notice of motion for Plaintiffs' motion under Rule 11. *See Star Mark Mgmt. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 176 (2d Cir. 2012).

The motion to dismiss (ECF Nos. 20-21) the Law Department has filed on behalf of the City of New York and several individual Defendants (hereafter, "Defendants" or "the City") is frivolous. It relies on carefully cherry-picked quotes that are misleading, if not deceptive[1], and misapplied caselaw that is unambiguously no longer good law. *See generally, Smith v Bayer Corp.*, 564 US 299 (2011).

Plus, from a 1000-foot view, the proposition the City seeks to establish is remarkable, and inconsistent with the "uncontroversial [proposition] that a lawyer" who is "represent[s] the government in civil disputes" necessarily "has a heightened ethical obligation that extends beyond just representing the narrow interests of her most direct client; she also must endeavor to 'do justice.'" *Dacosta v City of NY*, 296 F Supp 3d 569, 600 (EDNY 2017). To say that a class settlement dismissed claims by people not party to the settlement, who received no notice or procedural protection, is anathema to that obligation.

If Defendants do not withdraw the motion within 21 days, Plaintiffs will seek sanctions.

---

[1] *Compare, e.g.,* ECF No. 21 at 8 ("Plaintiffs (through the same counsel that signed the Sow FAC proposed class definition), explicitly defined the proposed class as individuals "arrested at protests in May, June, and September 2020"); *with* ECF No. 18 at 3 (a premotion letter, not "defin[ing] the proposed class," but simply saying Plaintiffs *here* "were arrested at protests in May, June, and September of 2020"); *and with Sow* FAC ¶ 510 ("all persons who were targeted for their First Amendment protected activity including being … subjected to excessive force," separated from arrest claims by an "and/***or***.")



### Discussion

Generally, speaking, Defendants' motion seeks to blow up the equilibrium *American Pipe* establishes, for minimal gains. According to Defendants, while the "the whole point of American Pipe," is to prevent exactly this, **anyone** with a claim should have been "filing their own protective lawsuits" to avoid a stray clause extinguishing every protest-based claim in the City between May 2020 and January 2021, without notice or any process, and "in the absence of a certification under [Rule 23]." *Smith*, 564 U.S. at 315.

Moreover, the City's arguments, taken seriously, are breathtaking in their scope. The City is asserting that, essentially, beyond the class action, without paying a dime, it settled **every single protest claim** in the City of New York between May 2020 and at least January 2021. Recall, the release and dismissal arguments have nothing to do with *American Pipe*, and there is nothing limiting them. However, the Supreme Court "could hardly have been more clear" that an agreement with "binding effect on nonparties, can come about in federal courts in **just one way**--through the procedure set out in Rule 23." *Smith v Bayer Corp.*, 564 US 299, 315 (2011) (emphasis added). Yet, the City provides no argument how any Plaintiff here received any of Rule 23's protections, because it cannot, and does not cite *Smith* in the relevant section.

### I. All Plaintiffs are members of the proposed class, and the City's argument otherwise is a bad faith refusal to read.

Defendants acknowledge Plaintiffs here were either arrested (and therefore, Defendants admit, members of the *Sow* proposed class) or "subjected to excessive force." ECF No. 21 at 3. And as Defendants acknowledge, "[c]lass tolling only does not apply if a plaintiff **never** could have been part of the putative class in the prior class action." *Id.* at 7 (emphasis added), *quoting Behrens v. JPMorgan Chase Bank N.A.*, No. 16 Civ. 5508 (VSB), 2019 U.S. Dist. LEXIS 55952, at *24 (S.D.N.Y. Mar. 31, 2019). *Accord, e.g., Defries v Union Pac. R.R. Co.*, 104 F.4th 1091, 1099 (9th Cir. 2024) "[w]here the scope of the class definition in an initial complaint 'arguably' includes particular bystander plaintiffs, they remain entitled to American Pipe tolling").

But, Defendants say, "Olukayode, Moran, and DeVlieger could not have been in the Sow proposed class because they were not arrested." ECF No. 21 at 8. To get here, Defendants make things up. They say "Plaintiffs (through the same counsel that signed the Sow FAC proposed class definition), explicitly defined the proposed class as individuals 'arrested at protests in May, June, and September 2020'" when what they are quoting says nothing of the kind. ECF No. 21 at 8. Instead, the quoted language, from a page-limited pre-motion letter, simply says Plaintiffs here were members of the proposed class **because** they "were arrested at protests in May, June, and September of 2020." ECF No. 18 at 3.

#### A. The proposed class definition covers people with force-only claims.

Mistruths aside, Defendants seem to want to use a summary description in a pre-motion letter to avoid actually analyzing the unambiguous, detailed class definition:

 Page 2 of 8

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com



> (a) all persons who were targeted for their First Amendment protected activity including being, inter alia, unlawfully detained and/or arrested without fair warning or ability to disperse, subjected to excessive force, and/or subjected to unreasonably lengthy and unsafe custodial arrest processing during the New York City protest marches in opposition to police misconduct and in support of police reform from May 28, 2020 through no earlier than November, 2020 (the "Protests");

First Amended Complaint, *Sow v. City of New York*, 21-cv-533, ECF No. 49 ¶ 510.  Or, reduced by cutting out things separated by the connector "and/or" (as well as undisputed issues like that this took place during "the Protests"):  "all persons who were targeted for their First Amendment protected activity including being … subjected to excessive force." *Id.* To illustrate further, here's a diagram:



The only way Defendants can argue that Plaintiffs were not in the proposed *Sow* class because they were not arrested is by simply ignoring the defined, proposed class, to say nothing of the whole *Sow* complaint's focus on force *qua* force.  Your office knows this, given the certified *Sierra* class and litigation about it.  Using a substantively identical construction, *Sierra* defined class membership as "all persons who were detained, arrested, **and/or subjected to force**." *Sierra*, ECF No. 171 ¶ 32 (emphasis added).  And the Court rejected essentially the position Defendants are advancing here in *Sierra* — finding the same language included not just force without arrest, but "indirect force." *See Sierra*, ECF No. 215.

COHEN&GREEN                                                                 Page 3 of 8

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



The City's position that an "and/or" list including "subjected to excessive force" does not cover people, per the City's own description, does not cover people "subjected to excessive force" (ECF No. 21 at 3) is simply not supported by the relevant text.

It is sanctionable, and we will seek sanctions if Defendants do not withdraw the motion.

B. **Plaintiffs were all arrested anyway.**

The City says Olukayode, Moran, and DeVlieger were not arrested. But the City has lost exactly this argument — that someone was never arrested because "no one ever succeeded in putting her in handcuffs and taking her away." *Esperanza v. City of New York*, 325 F. Supp. 3d 288, 301 (EDNY 2018). That is, it is accurate to say Plaintiffs here "were arrested at protests in May, June, and September of 2020." ECF No. 18 at 3. Given the "arguably" test that applies here, that's more than enough.

Olukayode was beaten with a baton to the face. ECF No. 1 ¶ 133. Moran was thrown to the ground (fracturing her wrist, among other things) and given orders by police. *Id.* ¶¶ 153-157. DeVlieger was encircled (or, in more common terms, "kettled"),[2] pepper-sprayed, hit over the head with a baton, the NYPD prevented medical care. ECF No. 1 ¶¶ 227-237. At those points in time, none of Olukayode, Moran, or DeVlieger believed they were free to leave — and believing, for example that one was free to leave while police were attacking medics for trying to provide medical care would not be reasonable. *Accord, e.g., Posr v. Doherty*, 944 F.2d 91, 99 (2d Cir. 1991) (false arrest claim because a reasonable person would not feel free to leave when an officer "took physical control of Posr and 'slammed' him against a wall while exclaiming 'assaulting a police officer, you are dead'"); *Esperanza v. City of New York*, 325 F. Supp. 3d 288, 301 (EDNY 2018) (rejecting City's argument "Esperanza was never arrested because 'no one ever succeeded in putting her in handcuffs and taking her away'" because "Officer Lluka allegedly grabbed and slammed her against the hood of a police car"). Likewise, no one in a "kettle" thinks they are free to leave — that's basically the point.

There is no good faith argument that, in the legal sense, Olukayode, Moran, and DeVlieger were *not* arrested. They were, under well-settled caselaw. At least given that the relevant standard is whether they are *arguably* members of the class — whether they were *never* possible class members — Defendants' argument otherwise is bad faith.

---

[2] Relatedly Defendants' claim that "no Plaintiff alleges they were subject to 'kettling'" is simply not true. ECF No. 1 ¶¶ 230; 230 n. 30. Given n. 30, it appears Defendants did not even *word search* the complaint before making this claim. Again, the lack of basis for Defendants' arguments is sanctionable.



Page 4 of 8

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com



## II. Defendants' virtual representation cases are no longer good law as applied here.[3]

Defendants' motion then argues virtual representation as privity, citing exclusively pre-2011 and largely pre-2008 cases. ECF No. 21 at 9-11. Pre-2011 is important, because a unanimous Supreme Court put the final nail in the coffin of virtual representation theory in *Smith v Bayer Corp.*, 564 US 299 (2011). Pre-2008 is important because a unanimous Supreme Court eliminated most of virtual representation theory — in a case where "the appeals court relied on [the plaintiff's] 'strong incentive to litigate' and Taylor's later engagement of the same attorney" — in *Taylor v Sturgell*, 553 US 880, 890 (2008).

Most of the argument relies on *Ruiz v. Comm'r of Dep't of Trans. of the City of N.Y.*, 858 F.2d 898 (2d Cir. 1988). However, Shepardizing *Ruiz*, **the first flag** on the case notes that "*Taylor* implicitly overruled *Ruiz*." *Leaf v Refn*, 742 F App'x 917, 925 (6th Cir 2018), *citing Taylor v Sturgell*, 553 US 880, 901 (2008).

In short, there are only six exception to virtual representation, per the Supreme Court, none argued here: (1) express agreement to be bound; (2) a substantive legal relationship between the party and non-party; (3) adequate representation by actual parties; (4) a non-party controlling the prior litigation; (5) designated representation; or (6) a "special statutory scheme.[4] Only (3) even arguably applies here. But since simply dismissing all claims without any consideration cannot possibly be adequate representation, that fails.[5]

Defendants' failure to even engage with the governing law — and citing bad law — is frivolous. It is particularly frivolous because it is knowing: Defendants' memo is clearly adapted from the motion in *Friedland v. City of New York*. *See,* Ex. 1 hereto (a compare of the two). And before Defendants filed their motion here, Plaintiffs in *Friedland* filed their opposition, explaining *Smith* at some length. *See Friedland*, ECF No. 39.

So, the failure to engage with *Smith* is knowing[6] — given that it is clear your office is coordinating and discussing these issues collectively.[7] And there is no non-frivolous justification for

---

[3] As applied, the cases Defendants cite don't apply on their own terms either, given that the *certified* class did not result in any final judgment as to the non-certified claims. But that's beside the point, since virtual representation does not exist at all anymore.

[4] Courts still apply *Ruiz*, but only within these exceptions — for example, under (4), where a "person who, although not party to the previous litigation … formulated an overarching strategy for the two actions." *XXIII Capital Ltd. v Goodwin Assoc. Mgt. Enters.,* 2024 US Dist LEXIS 230940, at *23 (SDNY Dec. 20, 2024). That is, it is applied for something at least *approaching* actual privity, not the sort of "common law class action" *Smith* and *Taylor* bar.

[5] And again, per *Taylor* itself, merely sharing an attorney is not relevant.

[6] Puzzlingly, Defendants cite it in their Point II*(C)*, but only in passing, immediately turning to say that a class settlement can do exactly what *Smith* says it cannot — "bind nonparties" — with no explanation at all. *Smith*, 564 US at 315

[7] To be clear, that is as it should be. The fault is not coordination or borrowing from past samples (although cite-checking another attorney's work is likely necessary, *see, e.g., Johnson v Dunn*, 2025 US Dist LEXIS 141805,

Page 5 of 8

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com



continuing to argue virtual representation following *Smith*:

> "Neither a proposed class action nor a rejected class action may bind nonparties. What does have this effect is a class action approved under Rule 23. …
>
> We could not allow 'circumvent[ion]' of Rule 23's protections through a 'virtual representation doctrine that allowed courts to 'create de facto class actions at will.' We could hardly have been more clear that a 'properly conducted class action,' with binding effect on nonparties, can come about in federal courts in just one way--through the procedure set out in Rule 23."

*Smith v Bayer Corp.*, 564 US 299, 315 (2011). Since, as the City acknowledges, "[t]here is no question that Plaintiffs were not members of the class ultimately certified in *Sow*" (ECF No. 21 at 7), they cannot be bound by anything in *Sow*, period. The Supreme Court could "hardly have been more clear" the City is wrong about this, and "wishing does not make it" otherwise. 564 US at 315.

We will seek sanctions for this reason too if Defendants do not withdraw their motion.

### III. Defendants' release arguments are frivolous.

The City then argues that claims were released. But the case Defendants have cited does not hold what Defendants say it does. Instead, that case says "[t]he identical factual predicate and adequate representation doctrines allow class action plaintiffs to release claims that share the same integral facts as settled claims, provided that the released claims are adequately represented prior to settlement" **requires that the plaintiffs bound are members of the class**: The Plaintiffs there, "[t]he Funds," obviously "**were members of the class** in the New York Action" and "had the opportunity to opt out of the settlement but did not do so." *Paribas v New Mexico State Inv. Council*, 2025 U.S. App. LEXIS 12181, at *4 (2d Cir May 20, 2025) (emphasis added).

The Circuit's reasoning **explicitly** turns on what the Funds did "[b]y choosing to **remain members of the settling class**." *Id.* at *11. The case does *not* say a class can bind a non-class member, as Defendants have claimed. Defendants' mischaracterization of *Paribas* is sanctionable.

Plus, the reading of the release in *Sow* to cover Plaintiffs *here* is atextual. It relies on saying, essentially, all plaintiffs in all cases are the same people. But "plaintiffs" referred to in *Sow* with what it means in this case. "Plaintiffs" — meaning the Plaintiffs here — did nothing in *Sow*. Meanwhile, "Plaintiffs" is a defined term in the Sow Stipulation and Order and does not include any Plaintiff here. *See Sow* Stipulation and Order at 1. Defendants' argument thus ignores the rule that "[p]hrases constructed in the passive voice use an implied subject or actor who carries out the verb." *McMunn v Babcock & Wilcox Power Generation Group, Inc.*, 869 F3d 246, 266 (3d Cir 2017). Plaintiffs here were not even known to anyone when the *Sow* settlement was drafted. "Thus, the question is *who*" was doing the withdrawing and dismissing, and "[t]he obvious answer is that" it was the *Sow* plaintiffs. *Id.* (emphasis in original); *see, also, e.g.*, Sow Stipulation and Order ¶¶ 87 at 88 (earlier paragraphs with

---

at *48-56 (ND Ala July 23, 2025)). Rather, it is that no attorney has raised a flag that these arguments are without any basis in law or fact.

    Page 6 of 8

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



those plaintiffs dismissing claims).

### IV. The release arguments also reflect sanctionable bad faith.

The release arguments also appear to reflect bad faith. As Defendants should know, in discussing the *Friedland* plaintiffs when they tried to file claims, our office explicitly sought to "confirm the City will not assert that the[ Friedland plaintiffs'] claims are extinguished by th[e *Sow*] settlement." *Friedland*, ECF No. 41- at 1. We asked "[i]f that is not the case, please say something immediately." *Id.* The City said nothing.

A government attorney "has a heightened ethical obligation that extends beyond just representing the narrow interests of her most direct client; she also must endeavor to 'do justice.'" *Dacosta v City of NY*, 296 F Supp 3d 569, 600 (EDNY 2017). If the City really and truly thought that — without notice or compensation — it was extinguishing *all* claims of any kind from any protest between May 2020 and January 2021, that was the moment to say so. The City didn't. So either (1) the arguments now are bad faith because the City is attaching a reading not even the City had at the time the settlement was drafted and applied (and objections could still be lodged) or (2) the City deliberately sat silent on this, intending to spring the clause as a trap. Either way, that kind of shell game is not ethical for anyone — and certainly not for a government lawyer with a duty to do justice to the population at large, including those she litigates against.

Obviously, had the City made clear it intended the settlement to extinguish all protest claims, not just those of class members, Judge McMahon would have never approved the settlement. Such a settlement cannot meet the basic requirements of class certification. The City's attempts to do so in this case warrants serious sanctions.[8] We will seek them.

Further, if Defendants do not withdraw this specific argument, we ask Defendants to clarify whether the City always intended the *Sow* Settlement to extinguish claims of non-class members. That will be relevant to the sanctions motion.

### Conclusion[9]

As set out above, the City's motion is frivolous. There is no good faith basis for the arguments made in the law as it exists, and by simply making things up (or not bothering check citations), Defendants are not acting in good faith. And by failing to engage with the relevant law, Defendants also fail to make an argument for extension of existing law.

If Defendants do not withdraw the motion, Plaintiffs will seek sanctions. At a bare minimum,

---

[8] We also note that the City was repeatedly sanctioned in *Sow* for failing to respond to letters, emails, and even Court Orders. *See, e.g., In re Policing*, 2022-02-11 Tr., generally. The Court repeatedly found such failures to be waiver, and warned such findings would continue. So, a non-response was certainly fair to read as a waiver at that late date.

[9] Defendants' *Monell* arguments are well-addressed in Judge McMahon's decision — that the City doesn't cite, despite extensive admissions it is directly addressing the same points — in *In re NY City Policing During Summer 2020 Demonstrations*, 548 F Supp 3d 383 (SDNY 2021).

COHEN&GREEN                                                                    Page 7 of 8

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



Defendants should correct their objective misstatements (e.g., the claim there are no kettling claims here; the claim Plaintiffs said the ***class*** was arrest-only; etc.) and mis-citations (e.g., citing *Ruiz* despite it being "implicitly overruled," *Leaf*, 742 F App'x at 925; implying *Paribas* did *not* involve ordinary class procedure, etc.).

                                                          Yours, &c.,

                                                       /s/
                                           _____

                                           J. Remy Green
                                               *Honorific/Pronouns: Mx., they/their/them*
                                           **COHEN&GREEN P.L.L.C.**
                                           *Attorneys for Plaintiffs*
                                           1639 Centre St., Suite 216
                                           Ridgewood, New York 11385

Enclosures.

COHEN&GREEN        Page 8 of 8

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com