*25 Civ. 1232*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADEWALE OLUKAYODE, MICHELLE
MORAN, MOR TALLA NDIAYE,
MAXIMILLIAN SILVER, and BLAKE
DEVLIEGER,

Plaintiffs,

-against-

CITY OF NEW YORK, FORMER MAYOR
BILL DE BLASIO, FORMER NEW YORK
CITY POLICE DEPARTMENT
COMMISSIONER DERMOT SHEA, and
FORMER NEW YORK CITY POLICE
DEPARTMENT CHIEF OF DEPARTMENT
TERENCE MONAHAN,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT**

***MURIEL GOODE-TRUFANT***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street, 3rd Floor*
*New York, N.Y. 10007*

*Of Counsel: Zoe Reszytniak*
*Tel: (212) 356-2547*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................I

PRELIMINARY STATEMENT ........................................................................................... 1

PROCEDURAL HISTORY & RELEVANT STATEMENT OF FACTS .................................... 2

STANDARD OF REVIEW ................................................................................................. 3

ARGUMENT .................................................................................................................... 4

**POINT I**

PLAINTIFFS' CLAIMS ARE TIME-BARRED....................................................................... 4

**POINT II**

PLAINTIFFS' RELIANCE ON <u>AMERICAN PIPE</u> TOLLING FAILS TO
SAVE THEIR TIME-BARRED CLAIMS................................................................................ 5

    A. The <u>Sow</u> Putative Class Excludes Plaintiffs. ................................................. 7

        i. Plaintiffs Olukayode, Devlieger and Moran Were Not
        Arrested or Engaged in Any First Amendment Activity
        During Their Encounters With Police.................................................... 9

        ii. Plaintiff Silver Was Not Arrested at a Location Or Date
        Referenced in <u>Sow</u> or Targeted For First Amendment
        Activity or Arrested Without Fair Warning........................................ 11

        iii. Plaintiff Ndiaye Was Not Arrested at a Location
        Referenced in <u>Sow</u>. ............................................................................ 12

    B. Taking Plaintiffs' Allegations as True Requires a Construction of The <u>Sow</u> Putative
    Class That In and Of Itself Forecloses the Applicability of <u>American Pipe</u>
    Tolling…………………………………………………………………………………12

**POINT III**

PLAINTIFFS' CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS
SHOULD BE DISMISSED ............................................................................................... 14

    A. The Decision and Order Issued in <u>Sow</u> is Instructive to the Dismissal of All But One
    of Plaintiffs' Claims. ................................................................................................ 14

    B.The Official Capacity Claims are Redundant and Should Be Dismissed. .................... 16

**Page**

**POINT IV**

PLAINTIFFS' <u>MONELL</u> CLAIMS FAIL ................................................................................ 16

    A.Plaintiffs' <u>Monell</u> Claims Fail Because There is No Surviving Claim Against Any Individual Defendant. ................................................................................ 16

    B. Plaintiffs Failed To Plead a <u>Monell</u> Claim. ................................................ 17

CONCLUSION ............................................................................................................ 20

**TABLE OF AUTHORITIES**

**Cases**                                                                                           **Page(s)**

American Pipe & Construction Co. v. Utah,
    414 U.S. 538 (1974)................................................1, 6, 7, 8, 9, 11, 13, 14, 15, 16, 17, 18

An v. City of N.Y.,
    2017 U.S. Dist. LEXIS 84364
    (S.D.N.Y. June 1, 2017)...............................................................................22

Aquino v. City of N.Y.,
    16 Civ. 1577 (GHW), 2017 U.S. Dist. LEXIS 10436
    (S.D.N.Y. Jan. 25, 2017).............................................................................21, 22

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)...................................................................................4, 20

Askins v. Doe,
    727 F.3d 248 (2d Cir. 2013).........................................................................21

Bd. of Trs. v. BNY Mellon, N.A.,
    No. 11 Civ. 6345 (RJS), 2012 U.S. Dist. LEXIS 132724,
    2012 WL 3930112 (S.D.N.Y. Sept. 10, 2012)...........................................8

Behrens v. JPMorgan Chase Bank N.A.,
    No. 16 Civ. 5508 (VSB), 2019 U.S. Dist. LEXIS 55952
    (S.D.N.Y. Mar. 31, 2019) ...........................................................................8

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)...................................................................................4

C.Q. v. N.Y.C. Dep't of Educ.,
    21-CV-3 (JGK), 2024 U.S. Dist. LEXIS 219704
    (S.D.N.Y. Dec. 3, 2024)..............................................................................6

Camotex, S.R.L. v. Hunt,
    741 F. Supp. 1086 (S.D.N.Y. 1990)...........................................................16

Corines v. Cnty. of Westchester,
    22-CV-5179 (KMK), 2024 U.S. Dist. LEXIS 54050
    (S.D.N.Y. Mar. 25, 2024) ...........................................................................6

Crown, Cork & Seal Co. v. Parker,
    462 U.S. 345 (1983)...................................................................7, 16, 17, 18

Davis v. Bethlehem Steel Corp.,
    600 F. Supp. 1312 (D. Md.),
    aff'd, 769 F.2d 210 (4th Cir.),
    cert. denied, 474 U.S. 1021 (1985) ............................................................................16

Doe v. State Univ. of N.Y. Purchase Coll.,
    617 F. Supp. 3d 195 (S.D.N.Y. 2022) ..........................................................................6

Eisen v. Carlisle & Jacquelin,
    417 U.S. 156, 94 S. Ct. 2140,
    40 L. Ed. 2d 732 (1974) ................................................................................................7

Ellul v. Congregation of Christian Bros.,
    774 F.3d 791 (2d Cir. 2014)..........................................................................................4

Favourite Ltd. v. Cico,
    42 N.Y.3d 250 (2024) ....................................................................................................6

Friedland, et al., v. City of N.Y., et al.,
    24 Civ. 07064 (DLC) ..............................................................................................8, 13

Galgano v. Cnty. of Putnam,
    16-CV-3572 (KMK), 2020 U.S. Dist. LEXIS 116682
    (S.D.N.Y. July 2, 2020) ..............................................................................................22

Hall v. Hall,
    138 S. Ct. 1118 (2018)..........................................................................................11, 12

Harris v. City of N.Y.,
    186 F.3d 243 (2d Cir. 1999)..........................................................................................5

Iowa Pub. Employees' Ret. Sys. v. MF Global, Ltd.,
    620 F.3d 137 (2d Cir. 2010)..........................................................................................4

Matter of Jaime v. City of N.Y.,
    41 N.Y.3d 531 (2024) ....................................................................................................6

McLaughlin v. Snowlift, Inc.,
    214 A.D.3d 720, 185 N.Y.S.3d 212
    (App. Div. 2023) ............................................................................................................6

Mercado v. City of N.Y.,
    08 CV 2855 (HP), 2011 U.S. Dist. LEXIS 140430
    (S.D.N.Y. Dec. 5, 2011)..............................................................................................22

Modos Chofetz Chaim, Inc. v. RBS Citizens, N.A.,
    14 F. Supp. 3d 191 (S.D.N.Y. 2014)............................................................................5

Monahan v. City of N.Y.,
  20-CV-2610 (PKC), 2022 U.S. Dist. LEXIS 59124
  (S.D.N.Y. Mar. 30, 2022) ...........................................................................24

Monell v. Dep't of Social Servs.,
  436 U.S. 658 (1978)..............................................................................21, 22

Monroe Cnty. Emps.' Ret. Sys. v. YPF Sociedad Anonima,
  980 F. Supp. 2d 487 (S.D.N.Y. 2013).......................................................18

In re New York City Policing During Summer 2020 Demonstrations,
  537 F. Supp. 3d 507 (S.D.N.Y. 2021)...................................7, 10, 11, 12

Newton v. City of N.Y.,
  779 F.3d 140 (2d Cir. 2015)................................................................23, 24

Noskov v. Roth,
  No. 19 Civ. 7431 (RA), 2020. U.S. Dist. LEXIS 126411
  (S.D.N.Y. July 17, 2020) .........................................................................4, 5

Nwoye v. Obama,
  23-1178-CV, 2024 U.S. App. LEXIS 5143
  (2d Cir. Mar. 4, 2024) .................................................................................6

Ormiston v. Nelson,
  117 F.3d 69 (2d Cir. 1997)...........................................................................5

Owens v. Okure,
  488 U.S. 235 (1999)......................................................................................5

Pani v. Empire Blue Cross Blue Shield,
  152 F.3d 67 (2d Cir. 1998)...........................................................................4

Payne v. City of N.Y.,
  20 Civ. 8224 (S.D.N.Y.) .............................................................................14

Pembaur v. City of Cincinnati,
  475 U.S. 469 (1986)....................................................................................22

Phillips v. Cnty. of Orange,
  894 F. Supp. 2d 345 (S.D.N.Y. 2012).......................................................20

Ricciuti v. N.Y.C. Transit Auth.,
  941 F.2d 119 (2d Cir. 1991)................................................................23, 24

Rini v. Zwirn,
  886 F. Supp. 270 (E.D.N.Y. 1995) ...........................................................20

Rodriguez v. Winski,
    973 F. Supp. 2d 411 (S.D.N.Y. 2013)....................................................................21

Roper v. City of N.Y.,
    2017 U.S. Dist. LEXIS 14918
    (S.D.N.Y. Jan. 25, 2017)........................................................................................21

Santiago v. Fischer,
    No. 9-CV-1383 (MKB) (ST), 2017 U.S. Dist. LEXIS 88397
    (E.D.N.Y. June 7, 2017) ......................................................................................8, 16

Schubert v. City of Rye,
    775 F. Supp. 2d 689 (S.D.N.Y. 2011)....................................................................20

Segal v. City of N.Y.,
    459 F.3d 207 (2d Cir. 2006)...................................................................................22

Shak v. JPMorgan Chase & Co.,
    156 F. Supp. 3d 462 (S.D.N.Y. 2016)......................................................................5

Sierra, et al. v. City of New York, et al.,
    20 Civ. 10291 (CM) (GWG) ....................................................................6, 7, 12, 14

Sow, et al. v. City of New York, et al.,
    21-CV-00533 (CM) (GWG)
    (S.D.N.Y. 2024)..........................1, 2, 3, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 19

Spavone v. N.Y. State Dep't of Corr. Serv.,
    719 F.3d 127 (2d Cir. 2013)...................................................................................19

Tangreti v. Bachmann,
    983 F.3d 609 (2d Cir. 2020)...................................................................................20

Thea v. Kleinhandler,
    807 F.3d 492 (2d Cir. 2015).....................................................................................4

In re UiPath, Inc. Sec. Litig.,
    755 F. Supp. 3d 498 (S.D.N.Y. 2024)......................................................................7

In re WorldCom Sec. Litig.,
    496 F.3d 254 (2d Cir. 2007)...................................................................................16

**Statutes**

9 N.Y.C.R.R. § 8.202.8.......................................................................................................5

42 U.S.C. § 1983.........................................................................1, 5, 6, 19, 20, 21, 22

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 4, 25

Fed. R. Civ. P. 41(a) ...................................................................................................18

Fed. R. Civ. P. 42(a) ...................................................................................................12

Local Rule 7.1 ..............................................................................................................25

## PRELIMINARY STATEMENT

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 alleging, *inter alia*, claims of false arrest, excessive force, First Amendment violation, First Amendment retaliation, and municipal liability in connection with Plaintiffs' interactions[1] with New York City Police Department ("NYPD") officers in 2020. Defendants City of New York ("the City"), former Mayor Bill De Blasio, former Police Commissioner Dermot Shea, and former Chief of Department Terence Monahan (hereinafter "Defendants"), by their attorney Muriel Goode-Trufant, Corporation Counsel of the City of New York, now move to dismiss the First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

All of Plaintiffs' claims arise from incidents occurring between May 29, 2020 and September 17, 2020. However, the instant action was not filed until February 11, 2025—well after the three-year statute of limitations ran on the 42 U.S.C. § 1983 claims. Although Plaintiffs could have availed themselves of the tolling from Governor Andrew Cuomo's Executive Orders in response to the Covid-19 pandemic, they did not. Plaintiffs instead are relying on American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974), to argue that the filing of the class action Sow, et al. v. City of New York, et al., 21-CV-00533 (CM) (GWG) (hereinafter "Sow"), tolled the applicable statute of limitations because they were members of the putative class, although not the class that was certified. However, on the face of the First Amended Complaint, it is clear that the principles outlined in American Pipe do not apply to Plaintiffs.

In addition, Plaintiffs' claims against the individual defendants are barred by collateral estoppel and their municipal liability claims against the City fail because the underlying claims are

---

[1] The facts alleged in the First Amended Complaint are accepted as true herein solely for the purposes of this motion.

time-barred, and, in any event, Plaintiffs fail to adequately allege a municipal policy or practice that led to their asserted deprivation of rights.

## PROCEDURAL HISTORY & RELEVANT STATEMENT OF FACTS

On January 21, 2021, Adama Sow and others filed a putative class action alleging false arrest and/or physical and emotional harm at protests in New York related to the death of George Floyd and Black Lives Matter. Sow Complaint dated January 21, 2021, 21-CV-00533 (CM) (GWG), ECF No. 1, at ¶ 444.

On March 6, 2021, the First Amended Complaint in Sow was filed, which revised the proposed class to

> (a) all persons who were targeted for their First Amendment protected activity including being, *inter alia*, unlawfully detained and/or arrested without fair warning or ability to disperse, subjected to excessive force, and/or subjected to unreasonably lengthy and unsafe custodial arrest processing during the New York City protest marches in opposition to police misconduct and in support of police reform from May 28, 2020 through no earlier than November 2020; and/or (b) all persons who have been or will be unlawfully detained and/or arrested without fair warning or ability to disperse since May 28, 2020, pursuant to the NYPD's policy, practice, and/or custom of, without legal justification, conducting retaliatory arrests and detentions of individuals protesting in opposition to police misconduct and in support of police reform.

Sow, First Amended Complaint dated March 5, 2021 (hereinafter "Sow FAC"), 21 Civ. 00533 (CM) (GWG), ECF No. 4, ¶510; FAC ¶25.

The Sow Amended Stipulation of Settlement and Order (hereinafter "Sow Amended Stipulation"), as negotiated by the parties, was accepted by the court on August 23, 2023. Sow, ECF No. 176. The class was certified on February 22, 2024. Sow, Amended Order Granting

Plaintiffs' Motion for Final Approval of Class Action Settlement dated March 5, 2024 (hereinafter "Sow Amended Final Approval Order"), ECF No. 199. Plaintiffs' counsel in this matter are also class counsel in Sow. Sow Amended Final Approval Order ¶2.

On February 11, 2025, Plaintiffs filed the Complaint in this matter, alleging violations of their constitutional rights in connection with incidents at protests between May 29, 2020 and September 17, 2020. See generally Complaint ("Compl."), ECF No. 1. Plaintiff Moran's incident occurred on May 29, 2020. FAC ¶¶92-93. Plaintiffs Ndiaye and DeVlieger's incidents occurred on May 30, 2020. FAC ¶114, ¶175. Plaintiff Olukayode's incident occurred on June 3, 2020. See FAC ¶73. Plaintiff Silver's incident occurred on September 17, 2020. FAC ¶142.[2] On July 25, 2025, Defendants filed a Motion to Dismiss the Complaint. ECF No. 22. Thereafter, on September 5, 2025, Plaintiffs filed the First Amended Complaint, which asserts the same substantive allegations regarding their federals claims but did not include state law claims. Compare Compl. with First Amended Complaint ("FAC"), ECF No. 25.[3] Defendants now move this Court for an order dismissing the First Amended Complaint in its entirety pursuant to Rule 12(b)(6).

## STANDARD OF REVIEW

Rule 12(b)(6) allows for a pleading to be dismissed when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim" that, if accepted as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (quoting Bell Atl. Corp. v.

---

[2] On April 21, 2025, Plaintiff Henderson voluntarily dismissed his claims from this action without prejudice. See ECF No. 12.

[3] Defendants respectfully note that there are duplicate paragraphs numbered "72" through "133" numbering due to an apparent formatting error. FAC at 13-24; 24-29. To avoid confusion, the paragraphs which contain a "duplicate" also cite to the corresponding page number.

Twombly, 550 U.S. 544, 556 (2007)). The factual allegations in the complaint must be more than speculative and must show the grounds upon which a plaintiff is entitled to relief beyond "labels and conclusions, and a formulaic recitation of a cause of action's elements." Twombly, 550 U.S. at 555. The pleading must include facts that articulate more than "a sheer possibility that a defendant has acted unlawfully." Ashcroft, 556 U.S. at 678.

Affirmative defenses may be raised in a pre-answer Rule 12(b)(6) motion if "the defense appears on the face of the complaint." Iowa Pub. Employees' Ret. Sys. V. MF Global, Ltd., 620 F.3d 137, 145 (2d Cir. 2010) (citing Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998)). This includes the defense that the statute of limitations has expired. See Noskov v. Roth, No. 19 Civ. 7431 (RA), 2020. U.S. Dist. LEXIS 126411, *9-10 (S.D.N.Y. July 17, 2020) (citing Thea v. Kleinhandler, 807 F.3d 492, 501 (2d Cir. 2015) (quoting Ellul v. Congregation of Christian Bros., 774 F.3d 791, 798 n.12 (2d Cir. 2014)). "Dismissing claims on statute of limitations grounds at the complaint stage 'is appropriate only if a complaint clearly shows the claim is out of time.'" Id. at *10 (citing Shak v. JPMorgan Chase & Co., 156 F.Supp.3d 462, 474 (S.D.N.Y. 2016) (quoting Harris v. City of N.Y., 186 F.3d 243, 250 (2d Cir. 1999)),

## **ARGUMENT**

### **POINT I**

### **PLAINTIFFS' CLAIMS ARE TIME-BARRED.**

The statute of limitations for a § 1983 civil rights action in New York is three years. See Owens v. Okure, 488 U.S. 235, 251 (1999). Such claims accrue "when the plaintiff knows or has reason to know of the injury which is the basis for his action." Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997) (citations omitted). In the instant matter, Plaintiffs' claims all accrued on the date of the alleged incidents, i.e., between May 29, 2020 and September 17, 2020. See FAC ¶73, ¶¶92-93, ¶114, ¶175, ¶142. Covid-19 Executive Orders in New York, however, tolled the statutes

of limitations period until November 4, 2020. <u>See</u> Executive Order (A. Cuomo) No. 202.8 (9

NYCRR 8.202.8); <u>Nwoye v. Obama</u>, 23-1178-CV, 2024 U.S. App. LEXIS 5143, at *2 (2d Cir.

Mar. 4, 2024) (affirming tolling of claims between March 20, 2020 and November 3, 2020) (citing

<u>McLaughlin v. Snowlift, Inc.</u>, 214 A.D.3d 720, 721 (App. Div. 2023)).

Factoring in the tolling period established by the COVID-19 Executive Orders, Plaintiffs'

§ 1983 claims accrued on or about November 4, 2020, the date the Executive Orders expired.

Accordingly, the statute of limitations on the latest of these claims, i.e. those for Plaintiff Silver's

arrest, ran on November 4, 2023. But Plaintiffs did not file the instant matter until February 11,

2025, more than fifteen months late. Therefore, although Plaintiffs received the benefit of the

COVID-19 tolling provisions, because they did not timely file their federal claims, they are time-

barred.

## POINT II

### PLAINTIFFS' RELIANCE ON <u>AMERICAN PIPE</u> TOLLING FAILS TO SAVE THEIR TIME-BARRED CLAIMS

In an attempt to salvage their time-barred claims, Plaintiffs rely on <u>American Pipe &</u>

<u>Construction Co. v. Utah</u>, 414 U.S. 538 (1974), to allege that the statute of limitations were tolled

by the filing of <u>Sow and another class action, Sierra, et al., v. City of New York, et al.</u>, 20 Civ.

10291 (CM) (GWG).[4] <u>See</u> FAC ¶8, ¶15, ¶15 n.2, ¶18.[5] Plaintiffs contend that they should benefit

---

[4] Despite the reference to <u>Sierra</u>, Plaintiffs cite to <u>Sierra</u> primarily for background information regarding NYPD's policing practices and do not plead any attempts at joining that matter as class members. Accordingly, the arguments herein will focus on <u>Sow</u>.

[5] Plaintiffs incorporate by reference the factual allegations contained in the complaints in the series of cases related to the Summer 2020 Protests that were consolidated under <u>In Re: New York City Policing During Summer 2020 Demonstrations</u>, No. 20 Civ. 08924 (CMG) (GWG), but no allegations beyond those contained in the <u>Sow</u> pleadings themselves are relevant for the purposes of tolling for the reasons discussed <i>infra</i>, Points B(i), (iii), (iv).

from the <u>American Pipe</u> tolling doctrine as purported members in the <u>Sow</u> proposed class, because they fell outside of the class as ultimately certified. <u>See</u> FAC ¶¶15-38.[6]

Generally, under <u>American Pipe</u>, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." <u>American Pipe</u>, 414 U.S. at 554. The tolling of the statute of limitations applied both in cases where class certification was denied, and where class certification was granted. <u>See</u>, <u>e.g.</u>, <u>Crown, Cork & Seal Co. v. Parker</u>, 462 U.S. 345, 353-54 (1983) (applying tolling to class members filing separate actions after class certification was denied); <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 176 n.13, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) (stating the statute of limitations were tolled for members who opted out after the class was certified). "This tolling benefit is afforded to active participants in the litigation as well as those who were unaware of the proceedings." <u>In re UiPath, Inc. Sec. Litig.</u>, 755 F. Supp. 3d 498, at *37 (S.D.N.Y. 2024).

"For an individual plaintiff to invoke <u>American Pipe</u> tolling, the Court must find: (i) there is a putative class action; (ii) the putative class includes the individual plaintiff; (iii) the individual plaintiff's claim was timely when the putative class action was filed; (iv) the individual plaintiff's claim was asserted by the class action; and (v) the individual plaintiff raises his claim against an individual whom the putative class named as a defendant." <u>Santiago v. Fischer</u>, No. 9-CV-1383 (MKB) (ST), 2017 U.S. Dist. LEXIS 88397, at *8 (E.D.N.Y. June 7, 2017) (internal citation omitted); <u>Behrens v. JPMorgan Chase Bank N.A.</u>, No. 16 Civ. 5508 (VSB), 2019 U.S. Dist. LEXIS 55952, at *24 (S.D.N.Y. Mar. 31, 2019) (citing <u>Bd. of Trs. v. BNY Mellon, N.A.</u>, No. 11 Civ. 6345 (RJS), 2012 U.S. Dist. LEXIS 132724, 2012 WL 3930112, at *10 (S.D.N.Y. Sept. 10, 2012)).

---

[6] There is no dispute that Plaintiffs were not members of the <u>Sow</u> certified class.

Ultimately, "[t]he purpose behind American Pipe tolling is to preserve the rights of plaintiffs who 'reasonably relied on the class representative, who sued timely, to protect their interests in their individual claims.'" See Friedland, et al., v. City of N.Y., et al., 24 Civ. 07064 (DLC), September 25, 2025 Opinion and Order filed at ECF No. 43 ("Friedland Opinion & Order") at 8 (quoting American Pipe, 414 U.S. at 743).

Here, Plaintiffs do not satisfy the second element required to invoke American Pipe tolling because the putative Sow class did not include them. Plaintiffs also fail to "allege facts to support a finding either that [they] could have reasonably relied on the Sow FAC's class definition to toll the statute of limitations for their individual claims or that there is no unfair surprise to the defendants from an assertion that the time for them to file their claims had been tolled." See Friedland Opinion & Order at 11. Thus, they should not be permitted to rely on American Pipe to allow their untimely claims to proceed.

**A. The Sow Putative Class Excludes Plaintiffs.**

The Sow FAC defined the proposed class as:

> (a) all persons who were targeted for their First Amendment protected activity including being, *inter alia*, unlawfully detained and/or arrested without fair warning or ability to disperse, subjected to excessive force, and/or subjected to unreasonably lengthy and unsafe custodial arrest processing during the New York City protest marches in opposition to police misconduct and in support of police reform from May 28, 2020 through no earlier than November, 2020 (the "Protests"); and

> (b) all persons who have been or will be unlawfully detained and/or arrested without fair warning or ability to disperse since May 28, 2020, pursuant to the NYPD's policy, practice, and/or custom of, without legal justification, conducting retaliatory arrests and detentions of individuals protesting in opposition to police misconduct and in support of police reform.

Sow FAC at ¶510; see also ¶FAC 25 (same).

Any ambiguities in the <u>Sow</u>'s proposed class requiring class members to have been arrested are readily resolved by an examination of the class allegations in the pleadings. Numerous paragraphs common to the named Plaintiffs, and/or all class members, support the position that the proposed <u>Sow</u> class never intended to represent the interests of individuals who were not arrested. <u>See</u> <u>e.g.</u> <u>Sow</u> FAC ¶514 ("The Named Plaintiffs [were] the victims of excessive and unreasonable force *in the course of these unconstitutional arrests.*") (emphasis added); ¶517 ("Like other members the Class, the Named Plaintiffs were *subject to arrests* in violation of their First Amendment rights, excessive use of force, and unconditional conditions of confinement."); ¶513 ("The named Plaintiffs *and all Class Members* were and will be victimized by these same *retaliatory policies of arresting protestors* against police brutality without legal justification.") (emphasis added)). The <u>Sow</u> FAC also explicitly detailed that specific named Plaintiffs, all of whom alleged they were arrested,  "were adequate class representatives because they were (i) arrested in New York City, (ii) without legal justification, (iii) while attending protests against police brutality; (iv) between May 28 and June 6, 2020; (v) their summonses or other charging instruments were later dismissed; and (vi) they were subjected to Defendants' Protest Arrest Processing Policies." <u>See</u> Sow FAC ¶ 510.

Moreover, Plaintiffs' conclusory contention that "[t]he parties in <u>Sow</u> and <u>In re: Policing</u>, at a bare minimum, understood that the <u>Sow</u> class covered at least all protests identified in Schedule A, and then Amended Schedule A" used in discovery in those cases, is without merit and should be disregarded. And a significant majority of the protests listed in Amended Schedule A were never referenced in the <u>Sow</u> pleadings. <u>See</u> FAC at 23 ¶130. It is unclear how the <u>Sow</u> proposed class could have been understood, or in any way be construed to cover "at least" all protests identified in Amended Schedule A, which cites a series of other cases in additional to

Sow.[7] First, Schedule A, and later Amended Schedule A, were used as tools in the consolidated protest cases under In re: Policing, to focus discovery on "potentially relevant" protests alleged in the pleadings. Second, as noted *supra* at Point II(A)(ii), the mere reference of a protest in a case that was merely consolidated with Sow for discovery purposes does not function to incorporate it into the Sow pleadings or the proposed class definition.

### i. Plaintiffs Olukayode, DeVlieger and Moran Were Not Arrested or Engaged in Any First Amendment Activity During Their Encounters with Police.

Although Plaintiffs Olukayode, DeVlieger and Moran allege to have encountered police in the vicinity of Protest Numbers 43, 13, and 3, respectively, on the Amended Schedule A, they cannot be considered Sow putative class members because they were not subject to custodial arrests or detentions at these locations. This is a necessary condition of membership in the proposed Sow class. FAC at 24 ¶¶79-84, ¶¶182-185; also Sow FAC 510, 513, 514, 517 (implicating custodial arrests and detentions as defining attributes of proposed class members).

In alleging that "[t]he Sow class explicitly and separately covers people unlawfully detained or subjected to force with and without arrest," Plaintiffs cite to an order describing the terms of the Sierra settlement agreement, which is inapposite here. FAC ¶26. Furthermore, the consolidated cases, including Sierra,[8] remained independent actions and their allegations were not incorporated into Sow. See In Re Policing 537 F. Supp. 3d 507, 511 n. 1 (S.D.N.Y. 2021) (In consolidating the 2020 Protest cases, the court noted that "'consolidation [under] Fed. R. Civ. P. 42(a)] does not merge the suits; it is a mere matter of convenience in administration, to keep them

---

[7] Plaintiffs claim that the City objected to the Amending of Schedule A "based on [its] understanding" that the "'Schedule A list of protest locations' was 'what we [(e.g., the City) understood] the whole litigation has been based upon this far,'" ignores that any assertion regarding "this litigation" in the context the consolidated protest cases would have obviously referred to the ten consolidated matters as a whole; not specifically Sow. See FAC at 24 ¶131.

[8] Which later was consolidated with another action to become "Sierra-Wood."

in step. They remain as independent as before.'") (quoting <u>Hall v. Hall</u>, 138 S. Ct. 1118, 1125, 1127 (2018)). In addition, <u>Sierra</u> brought claims arising out of a single protest on June 4, 2020 in Mott Haven, at which none of the Plaintiffs here allege to have been present, so Plaintiffs' citation to a settlement agreement in <u>Sierra</u> cannot support their allegation that Plaintiffs here were members of the <u>Sow</u> putative class.

Moreover, none of these Plaintiffs allege they were "targeted" while engaging in First Amendment activity. Plaintiff Olukayode alleges that he was apparently "struck" by an unknown NYPD officer but fails to allege to have been engaging in any protected conduct at that exact same moment. <u>See</u> FAC ¶¶77-78. Though he claims, in a conclusory fashion, that he believes he was struck "in retaliation" for exercising his rights to protest and record police, he fails to allege to be participating in a protest or recording police. <u>See id.</u> ¶¶77-79. Rather, he claims he was merely following a protest and documenting and photographing "First Amendment Activity" at some point in the afternoon of June 3, 2020. <u>See id.</u> ¶¶73, 76. Plaintiff DeVlieger merely alleges he was present at a protest when at some point he was encircled by police onto a sidewalk, and then made his way into a crosswalk,[9] when he was hit on the head by an unknown NYPD officer. <u>See id.</u> ¶175, ¶179, ¶182. Plaintiff Moran claims that she observed her brother being placed under arrest, and asked a nearby officer the reason for her brother's arrest. <u>Id.</u> ¶¶97-98. This officer instructed Plaintiff Moran to "back up," when another unidentified officer allegedly grabbed and "threw" her. <u>See id.</u> ¶¶99-100. Thus, in addition to Plaintiff Moran's failure to allege that she was arrested, she fails to allege that she was engaging in any protest activity– rather, she was involving herself in an arrest-in-progress of another.

---

[9] Suggesting he was in fact free to leave and not restricted in his movement because he was able to leave the sidewalk where he was allegedly encircled and enter into the crosswalk.

Thus, Plaintiffs Olukayode, DeVlieger and Moran's reliance on <u>American Pipe</u> tolling fails.

ii.    **Plaintiff Silver Was Not Arrested at a Location or Date Referenced in <u>Sow</u> or Targeted for First Amendment Activity or Arrested Without Fair Warning.**

Plaintiff Silver alleges that because he was present at Protest Number 70 listed in the Amended Schedule A, he is part of the <u>Sow</u> proposed class. FAC ¶144. Fatal to her conclusory contention, however, is that she was not arrested, Protest Number 70 didn't even occur on a date referenced by the <u>Sow</u> pleadings, and this protest was not "in opposition to police misconduct" and "in support of police reform."

The <u>Sow</u> pleadings are silent regarding any arrest after June 6, 2020, nor does it reference any protest within the meaning of the class definition occurring after that date. <u>See</u> <u>generally</u> <u>Sow</u> Compl. and FAC. Here, Plaintiff Silver was arrested on September 17, 2020 – a date that is not referenced in <u>Sow</u>. <u>See</u> FAC ¶¶141-152. Indeed, Protest Number 70 is listed on Amended Schedule A with a citation to "<u>Payne</u>," meaning it was a location alleged in that lawsuit, not in <u>Sow</u>. Moreover, this protest was in response to "the treatment of women detained while in Immigration and Customs Enforcement (ICE) custody," not a demonstration "in opposition to police misconduct" and "in support of police reform." FAC ¶144; Amended Schedule A, Protest 70 (citing to <u>Payne v. City of N.Y.</u>, 20 Civ. 8224 (S.D.N.Y.) at ECF No. 54 ¶76 ("On September 17, 2020, approximately 50 to 60 protestors gathered at Foley Square to protest the treatment of women detained while in Immigration and Customs Enforcement (ICE) custody".)). Indeed, this protest was at Foley Square, and the allegations from <u>Payne</u> describing this protest do not indicate protesters ever traveled to the West Side Highway where Plaintiff Silver was arrested. <u>See</u> FAC ¶¶142-145. Furthermore, Plaintiff Silver is alleged to have been a part of a "group of protestors" who began marching in the street, when NYPD officers instructed that they could not congregate

11

there. Id. ¶142, ¶¶146-147. After moving to the sidewalk, they were instructed they could not congregate there either, but they remained. Id. ¶¶148-149. As Plaintiff Silver remained standing in the sidewalk, after being instructed to disperse, he was arrested. Id. ¶¶149-150. These allegations do not suggest he was "targeted" for a protected activity or denied the opportunity to disperse. Accordingly, Plaintiff Silver's reliance on American Pipe tolling fails.

### iv.    Plaintiff Ndiaye Was Not Arrested at a Location Referenced in Sow.

The First Amended Complaint alleges that Plaintiff Ndiaye was arrested at Protest Number 15 on Amended Schedule A, which occurred on May 30, 3030, in Harlem and the West Side Highway, in Manhattan. Amended Schedule A, Protest No. 15 (citing to "People," ECF No. 51 ¶¶402-407). In addition to the fact that Protest Number 15 cites to People v. City of New York, and not Sow, the First Amended Complaint also alleges that Plaintiff Ndiaye was arrested in the vicinity of West 24th Street and 7th Avenue – which is simply not in Harlem or by the Westside Highway. This arrest location, West 24th Street and 7th Avenue, is not mentioned in Sow, or Amended Schedule A. See FAC at 28 ¶117; Amended Schedule A at Protest Nos. 15-17 (describing protests in Manhattan on May 30, 2020, in Harlem, the Westside Highway, Herald Square, Union Square to FDR drive, the Lower East Side, and City Hall). Accordingly, Plaintiff Ndiaye's reliance on American Pipe tolling fails.

### B. Taking Plaintiffs' Allegations As True Requires a Construction of the Sow Putative Class That In and Of Itself Forecloses the Applicability of American Pipe Tolling.

"The Second Circuit has recognized that a significant consideration in determining whether American Pipe tolling applies is whether one of the purposes of a statute of limitations, 'to put defendants on notice of adverse claims . . .' [is] fulfilled "when [the] class action is commenced.'" Santiago v. Fischer, No. 9-CV-1383 (MKB) (ST), 2017 U.S. Dist. LEXIS 88397, at *21-22 (E.D.N.Y. June 7, 2017) (citing WorldCom, 496 F.3d at 254); (quoting Crown, Cork & Seal, 462

U.S. at 352); <u>accord</u> <u>American Pipe</u>, 414 U.S. at 554-55 (noting that the purposes of the statute of limitations are "satisfied when . . . a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment.")). "It would be contrary to the <u>American Pipe</u> doctrine to hold that class complaints asserting the generalized grievances of an open-ended group alert the defendant to the identity of those likely to participate in the action against him." <u>See</u>, <u>e.g.</u>, <u>Camotex,</u> <u>S.R.L. v. Hunt</u>, 741 F. Supp. 1086, 1091 (S.D.N.Y. 1990) (citing <u>Davis v. Bethlehem Steel Corp.,</u> 600 F. Supp. 1312, 1319 (D. Md.), <u>aff'd</u>, 769 F.2d 210 (4th Cir.), <u>cert. denied</u>, 474 U.S. 1021 (1985) (excessively broad class complaint alleging generalized racial discrimination claims does not satisfy notice requirements of <u>American Pipe</u>)).

The <u>Sow</u> FAC's "generalized" putative class definition and allegations in the pleadings did not provide Defendants with fair notice that Plaintiffs' claims here could have or were intended to have been among those seeking recourse through <u>Sow</u>. For example, in the <u>Sow</u> FAC, in an attempt to provide the "number and generic" identities of the proposed class members, the <u>Sow</u> FAC pointed to a New York City Department of Investigation Report indicating the number of people arrested by NYPD in connection with the Protests related to the proposed class, which occurred between May 28, 2020 through June 5, 2020. <u>Sow</u> FAC ¶513. Similarly, the proposed class "who have been or will be unlawfully detained and/or arrested without fair warning or ability to disperse since May 28, 2020, pursuant to the NYPD's policy [. . .] of [. . .] conducting retaliatory arrests and detentions of individuals protesting in opposition to police misconduct and in support of police reform," is too generalized, and open-ended so as to make tolling applicable. If Plaintiffs' claims here were encompassed by the <u>Sow</u> pleadings, they would amount to the type of "generalized

13

grievances of an open-ended group" that should not be afforded tolling under <u>American Pipe</u>, and are of the type that would subject Defendants to the "unfair surprise." contrary to the policy considerations underpinning <u>American Pipe</u> tolling and class actions generally. <u>See</u> <u>Crown, Cork & Seal</u>, 462 U.S. at 353 (holding that the statute of limitations may be tolled so long as there is no potential that doing so will force Defendants to face any unfair surprises).

Ultimately, the <u>Sow</u> FAC failed to adequately define an ascertainable, identifiable class so as to have put Defendants on notice that Plaintiffs' claims here were or could be encompassed by <u>Sow</u>.

<b>POINT III</b>

<b>PLAINTIFFS' CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED.</b>

**A.    The Decision and Order Issued in Sow is Instructive to the Dismissal of All But One of Plaintiffs' Claims.**

Plaintiffs' claims against the individual Defendants should be dismissed for the same reasons articulated the Decision and Order by the Honorable Colleen McMahon in <u>Sow</u>. <u>See</u> <u>Sow</u> Decision & Order, ECF No. 116. In that Decision and Order, Judge McMahon held that the facts alleged were insufficient to state a claim, specifically as to the constitutionality of the curfew order put in place by former Mayor de Blasio; former Police Commission Shea's lack of personal involvement in any of the protests detailed in the <u>Sow</u> FAC (which are the same as those referenced in depth in the instant First Amended Complaint); former NYPD Chief Monahan's lack of involvement in any protests beyond those on May 29, 2020 and June 4, 2020; and the all official capacity claims against all individual defendants. <u>See</u> <u>Sow</u> Decision & Order, ECF No. 116.Thus, the Decision and Order in Sow is instructive here and should function to preclude all of Plaintiffs'

claims against the individual Defendants, except for one against Defendant DeBalsio (which was not dismissed by the Order but fails on other grounds as detailed *infra* Point III(B)).

### B.  Plaintiffs Failed to Allege Personal Involvement.

"To state a claim under Section 1983, a plaintiff must also allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation." <u>See Spavone v. N.Y. State Dep't of Corr. Serv.</u>, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted)). "A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights." <u>See Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009). "Rather, [t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official[.]" <u>Tangreti v. Bachmann</u>, 983 F.3d 609, 620 (2d Cir. 2020).

Here, nothing in the First Amended Complaint suggests that any individual Defendant was personally involved in any of Plaintiffs' individual experiences. The only claim against any individual defendant that is not plainly barred is Plaintiff Olukayode's claim against DeBlasio. <u>See Sow</u> Decision & Order, ECF No. 116. However, the First Amended Complaint fails to state a claim against DeBlasio, as he is not alleged to have been personally involved in the May 29, 2020 protest giving rise to Plaintiff Olukayode's claims. Relatedly, even if the other Plaintiffs' claims against Defendants Monahan, Shea, and DeBlasio did not patently fail to state a claim as detailed by the rationale articulated in the <u>Sow</u> Decision and Order, they must be dismissed because their personal involvement is not plead. Thus, any claims against the individual Defendants should be dismissed due to lack of personal involvement.

**B. The Official Capacity Claims are Redundant and Should be Dismissed.**

Here, the City is named as a defendant, as is former Mayor Bill De Blasio, former Police Commissioner Dermot Shea, and former Chief of Department Terence Monahan. Naming these officials as Defendants in their official capacities is duplicative of Plaintiffs' claims against the City of New York. See, e.g., Schubert v. City of Rye, 775 F. Supp. 2d 689, 699 (S.D.N.Y. 2011) (quoting Rini v. Zwirn, 886 F. Supp. 270, 281 (E.D.N.Y. 1995) ("Where the governmental entity can itself be held liable for damages as a result of its official policy, a suit naming the legislators in their official capacity is redundant.")); Phillips v. Cnty. of Orange, 894 F. Supp. 2d 345, 384 n.35 (S.D.N.Y. 2012) (noting that courts in the Second Circuit routinely dismiss official capacity claims against municipal officials as duplicative of the claims against the municipality) (collecting cases)). Thus, these claims should be dismissed.

**POINT IV**

**PLAINTIFFS' MONELL CLAIMS FAIL.**

**A. Plaintiffs' Monell Claims Fail Because There is No Surviving Claim Against Any Individual Defendant.**

"In a lawsuit containing a Monell claim, if the plaintiff cannot show that his or her constitutional rights were violated by any individual defendants, the Monell claim will also fail." Roper v. City of N.Y., 2017 U.S. Dist. LEXIS 14918, at *2-3 (S.D.N.Y. Jan. 25, 2017) (citing Askins v. Doe, 727 F.3d 248, 253-54 (2d Cir. 2013) ("[T]he plaintiffs' failure to secure a judgment against the individual actors would . . . preclude a judgment against the municipality if the ruling . . . resulted from the plaintiff's failure to show that they committed the alleged tort.") (emphasis omitted). As detailed *supra*, the First Amended Complaint does not claim that the individual Defendants were in any way involved in the incidents giving rise to Plaintiffs' interactions with

16

the police. As no claim against the individual Defendants can survive, for the reasons discussed *supra* Point III, any Monell claim must similarly fail. See id.

> **B.    Plaintiffs Failed to Plead a Monell Claim.**

In order to hold the City of New York liable under 42 U.S.C. § 1983 for an alleged constitutional violation, Plaintiffs must plead: "(1) an official policy or custom that (2) cause[d] [plaintiff] to be subjected to (3) a denial of a constitutional right." See Aquino v. City of N.Y., 16 Civ. 1577 (GHW), 2017 U.S. Dist. LEXIS 10436, at *7-8 (S.D.N.Y. Jan. 25, 2017) (citing Rodriguez v. Winski, 973 F. Supp. 2d 411, 425 (S.D.N.Y. 2013)). A municipality may not be held liable under 42 U.S.C. § 1983 solely based on *respondeat superior*. See Monell v. Dep't of Social Servs., 436 U.S. 658, 663 n.7, 694-95 (1978). Thus, a "municipality is not vicariously liable for its employees' actions under 42 U.S.C. § 1983." Aquino, 2017 U.S. Dist. LEXIS 10436 at *7). However, municipalities are "liable for 'their own illegal acts.'" Id. (citations omitted). Plaintiffs can satisfy the "policy or custom" prong required for municipal liability by alleging "the existence of (1) a formal policy, see Monell, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of [plaintiff's] rights, see Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) (plurality opinion); (3) a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policymakers, see Monell, 436 U.S. at 690-91; or (4) a failure to properly train or supervise municipal employees that amounts to 'deliberate indifference to the rights of those with whom municipal employees will come into contact.'" Aquino, 2017 U.S. Dist. LEXIS 10436at *8. "To establish Monell liability, the causal link must be strong; that is, the policy must be the 'moving force' behind a constitutional violation." Mercado v. City of N.Y., 08 CV 2855 (BSJ) (HP), 2011 U.S. Dist. LEXIS 140430, at *23 (S.D.N.Y. Dec. 5, 2011 (citing Monell, 436 U.S. at 691, 694).

A claim for municipal liability cannot stand where there is no causal connection between Plaintiffs alleged constitutional violations and the alleged unlawful custom. See, e.g., Segal v. City of N.Y., 459 F.3d 207, 219 (2d Cir. 2006 ("Monell does not provide a separate cause of action . . .; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."); Galgano v. Cnty. of Putnam, 16-CV-3572 (KMK), 2020 U.S. Dist. LEXIS 116682, at *30-31 (S.D.N.Y. July 2, 2020) (same). Stated differently, even where a plaintiff identifies an unconstitutional custom or practice, if that plaintiff's rights were not violated as a result of the application of that custom or practice the claim fails. See U.S. Const. Art. III, Section 2; An v. City of N.Y., 2017 U.S. Dist. LEXIS 84364, at *8 (S.D.N.Y. June 1, 2017) (holding that standing, including injury in fact, is required to bring Monell claim).

Here, Plaintiffs' allegations regarding municipal liability center around the existence of unconstitutional "policies and practices" regarding arrests without fair warning, and protest-related arrests. See FAC ¶¶256-288 (alleging "policies and practices" regarding arrests for curfew order and traffic violations, detentions, property seizures, and "Protesting Arrest Processing"). However, only two Plaintiffs here even claim they were arrested – importantly, neither were arrested for violations of the Mayoral COVID-19 curfew order, or pursuant to any provision of vehicle and traffic law, and only Plaintiff Silver was taken a central arrest processing location so as to have been subject to any "protest arrest processing" policy (as opposed to Plaintiff Ndiaye, who was taken to a nearby precinct). See FAC ¶130, ¶¶164-65; Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991) ("Critically, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."); Newton, 779 F.3d at 152. Thus, Plaintiffs do not sufficiently allege that their rights were violated

18

*as a result of any* of the purported municipal arrest policies/practices detailed in the First Amended Complaint.

Plaintiffs also claim the existence of a "policy and/or practice" of excessive force to control the speech of protestors, which fails to state a claim because in the allegations it is explicitly noted that the uses of force at issue were not sanctioned by NYPD training, protocol, and procedures, and thus cannot amount to an official policy. See FAC at ¶¶243-255. Plaintiffs' conclusory allegation that there was any cognizable policy, official or unofficial, regarding the use of force based on perceived association and/or proximity to a specific group is not supported by any facts offered to detail Plaintiffs' individual experiences. The majority of the allegations regarding this "policy" detail instances of force in the context of mass-crowd control methods such as the use of pepper spray and the application of flex-cuffs. No Plaintiff claims pepper spray caused them any injury,[10] and only Plaintiff Silver claims he was placed in flex cuffs that were unreasonably tight, but also alleges officers removed the cuffs after he complained. See id. at ¶¶157-160; Ricciuti, 941 F.2d at 123.

Finally, Plaintiffs' citations to other cases to support their purported Monell claim is inadequate. See, e.g., FAC ¶208. "The fact that a civil action was filed and settled voluntarily is not evidence of liability on the part of the City, let alone evidence that the City was on notice of a claimed deficiency in the training it gave to NYPD members. Absent a finding of liability by a judge or jury, the existence of historical civil actions raising similar claims "establishes . . . that other individuals have plausibly alleged that they experienced similar violations of their constitutional rights as [plaintiff] alleges here, not that those violations actually occurred."

---

[10] Except Plaintiff Henderson, who voluntarily withdrew his claims in this action. Further, while Plaintiff DeVliegers makes allegations about police using pepper spray in his vicinity, he does not claim to have been injured or otherwise harmed by the use of pepper spray. See FAC ¶¶181-184.

Monahan v. City of N.Y., 20-CV-2610 (PKC), 2022 U.S. Dist. LEXIS 59124, at *52 (S.D.N.Y. March 30, 2022) (citations omitted). Thus, Plaintiffs cannot plausibly plead their municipal liability claim by relying on citations to other, unrelated matters. Accordingly, Plaintiffs fail to state municipal liability claims and they should be dismissed.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant their motion pursuant to Rule 12(b)(6), and dismiss the First Amended Complaint in its entirety, with prejudice, and for such other and further relief as the Court deems proper and just.[11]

Dated:    New York, New York
          September 26, 2025

MURIEL GOODE-TRUFANT
Corporation Counsel of the City of
New York
*Attorney for Defendants*
New York, New York 10007
(212) 356-2537

By:    /s/ *Zoe Reszytniak*
       Zoe Reszytniak
       *Assistant Corporation Counsel*
       Special Federal Litigation Division

CC:    **VIA ECF**
       *Counsel of Record*

---

[11] In accordance with Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that the total number of words in the foregoing Memorandum of Law, inclusive of point headings and footnotes is 6,469. I have relied on the word count function of Microsoft Word to prepare this certification.