**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Adewale Olukayode, Michelle Moran, Mor Talla
Ndiaye, Maximillian Silver, and Blake DeVlieger;

           *Plaintiffs,*

      v.

City of New York; Former Mayor Bill De Blasio;
Former NYPD Commissioner Dermot Shea; and
Former NYPD Chief of Department Terence
Monahan,;

           *Defendants.*

**25-cv-01232 (PAE)**

**Plaintiffs Request Oral Argument**

---

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

**COHEN&GREEN P.L.L.C.**
J. Remy Green
Elena L. Cohen
1639 Centre St., Suite 216
Ridgewood, New York 11385
t:  (929) 888-9480

**GIDEON ORION OLIVER**
277 Broadway, Suite 1501
New York, NY 10007
t:  (718) 783-3682

**WYLIE STECKLOW PLLC**
Wylie Stecklow
Carnegie Hall Tower
152 W. 57th Street, 8th Floor
NYC NY 10019

**BELDOCK LEVINE & HOFFMAN LLP**
Jonathan C. Moore
David B. Rankin
99 Park Avenue, PH/26th Floor
New York, New York 10016

October 10, 2025

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................................ii

TABLE OF AUTHORITIES ...........................................................................................................iv

PRELIMINARY STATEMENT .......................................................................................................1

FACTUAL STATEMENT ................................................................................................................1

    A.    Plaintiffs are assaulted and arrested as part of protest enforcement, and subjected to protest-specific arrest processing procedures. ..........................................................1

        1.    Adewale Olukayode. ............................................................................................2

        2.    Michelle Moran. ...................................................................................................3

        3.    Mor Talla Ndiaye ................................................................................................3

        4.    Maximillian Silver. ..............................................................................................4

        5.    Blake DeVlieger. .................................................................................................5

    B.    History of the *Sow* class action. .................................................................................5

    C.    Policies and claims at issue in *Sow*. ...........................................................................7

STANDARDS OF REVIEW ...........................................................................................................10

ARGUMENT ..................................................................................................................................11

    I.    Plaintiffs Were Members of the *Sow* Proposed Class. ........................................12

    A.    Plaintiffs are members of Clause A of the *Sow* Proposed Class because they were arrested for First Amendment conduct during the Protests. ...................................12

        1.    Plaintiffs were engaged in black-letter First Amendment activity. ...........................12

2.    Plaintiffs were all at least one of unlawfully detained, arrested without fair warning or ability to disperse, subjected to excessive force, or subjected to unreasonably lengthy and unsafe custodial arrest processing. ........................................................15

3.    Plaintiffs were subjected to that conduct at the Protests. ..........................................15

B.    Plaintiffs also arguably fit under Clause (b) because they were arrested pursuant to NYPD's protest policies. ...............................................................................................16

C.    Defendants' "Date Referenced in *Sow*" argument is incoherent. ...........................17

1.    The *Sow* Proposed Class has no reference to specific dates. ....................................17

2.    Defendants' arguments about Schedule A locations are wrong. ...............................18

D.    Defendants' complaints about the scope of the definition of the proposed class are misguided. ........................................................................................................................20

II.    The Parties Agree on Collateral Estoppel. ............................................................................23

III.    Defendants' *Monell* Arguments are Misguided and Barred. ..............................................23

A.    Defendants' *Monell* arguments are barred by collateral estoppel. ...........................23

B.    Plaintiffs incorporate by reference Judge McMahon's *In re Policing* decision, which explains why Defendants are wrong. ............................................................................24

C.    Defendants misunderstand the underlying claim doctrine. .......................................24

IV.    The Claims Against de Blasio are Plausible and Require Discovery. .................................25

CONCLUSION ..........................................................................................................................26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. City of New York,*
    466 F. Supp. 2d 545 (S.D.N.Y. 2006)...........................................................................16

*Ashcroft v. Iqbal,*
    556 US 662 (2008).......................................................................................................10

*In re AXA Equit. Life Ins. Co. COI Litig.,*
    2020 US Dist LEXIS 145948 (SDNY Aug. 13, 2020)...................................................21

*Bell Atl. Corp. v. Twombly,*
    550 US 544 (2007).......................................................................................................10

*Burley v City of NY,*
    2005 US Dist LEXIS 4439 (SDNY Mar. 23, 2005)......................................................21

*Camotex, S.R.L. v. Hunt,*
    741 F. Supp. 1086 (S.D.N.Y. 1990)..............................................................20, 21, 22

*Case v. City of N.Y.,*
    408 F. Supp. 3d 313 (SDNY 2019)..............................................................................14

*Case, et al. v. City of N.Y., et al.,*
    233 F.Supp.3d 372 (SDNY 2017).................................................................................10

*City of Los Angeles v. Heller,*
    475 US 796 (1986).......................................................................................................24

*Compagnie Financiere v. Merrill Lynch,*
    232 F.3d 153 (2d Cir. 2000).........................................................................................12

*Coronna v County of Suffolk,*
    2008 US Dist LEXIS 45075 (EDNY June 9, 2008).....................................................25

*Curley v Vil. of Suffern,*
    268 F3d 65 (2d Cir. 2001)...........................................................................................25

*Defries v Union Pac. R.R. Co.,*
    104 F.4th 1091 (9th Cir. 2024).....................................................................................11

*Dinler v City of NY,*
    2012 US Dist LEXIS 141851 (SDNY Sep. 30, 2012).............................................7, 10, 16

*Doe v. Pataki*,
    481 F.3d 69 (2d Cir. 2007) .................................................................................................. 11

*Dowling v. City of N.Y.*,
    2013 US Dist. LEXIS 142108 (E.D.N.Y. Sep. 30, 2013) ................................................. 14

*Escobar v City of NY*,
    766 F Supp 2d 415 (EDNY 2011) ...................................................................................... 25

*Fairfield Sentry Ltd. v Citibank, N.A.*,
    630 F Supp 3d 463 (SDNY 2022) ...................................................................................... 15

*Fana v City of NY*,
    2018 US Dist LEXIS 51579 ................................................................................................ 16

*Floyd v City of NY*,
    283 FRD 153 (SDNY 2012) ............................................................................................... 20

*Floyd v City of NY*,
    959 F Supp 2d 540 (SDNY 2013) ...................................................................................... 20

*Haus v. City of New York*,
    03-cv-4915 (RWS)(MHD) 2006 WL 1148680 (S.D.N.Y. April 24, 2006) ....................... 16

*Hilderbrandt v. City of N.Y.*,
    2014 US Dist. LEXIS 128170 (E.D.N.Y. Sep. 11, 2014) ................................................. 14

*Houston v. Hill*,
    482 US 451 (1987) .............................................................................................................. 13

*Jackson v. City of N.Y.*,
    939 F. Supp. 2d 219 (E.D.N.Y. 2013) ............................................................................... 14

*MacNamara v City of NY*,
    275 FRD 125 (SDNY 2011) ............................................................................................... 20

*McBean v City of NY*,
    228 FRD 487 (SDNY 2005) ............................................................................................... 21

*In re New York City Policing During Summer 2020 Demonstrations*,
    20-cv-8924 ................................................................................................................. *passim*

*In re NY City Policing During Summer 2020 Demonstrations*,
    548 F Supp 3d 383 (SDNY 2021) ............................................................................ *passim*

*Peoples v Annuci*,
    2021 US Dist LEXIS 60909 (SDNY Mar. 30, 2021) ........................................................ 11

*Phillips v. City of New York*,
    21-cv-8149 (ALC) (SLC), ECF No. 187 (SDNY 2024) ...................................................22

*Retirement Sys. v YPF Sociedad Anonima*,
    980 F Supp 2d 487 (SDNY 2013) ...............................................................................1, 11

*Rodriguez v. City Of New York*,
    21-cv-10815, ECF No. 107-1 (SDNY) ...........................................................................13

*Sawtell v E.I. Du Pont De Nemours & Co.*,
    22 F3d 248 (10th Cir. 1994)............................................................................................11

*Schiller v City of NY*,
    2008 US Dist LEXIS 4253 (SDNY Jan. 23, 2008)..........................................................17

*Shamir v. City of N.Y.*,
    804 F.3d 533 (2d Cir. 2015) ...........................................................................................10

*Sierra v City of NY*,
    2024 US Dist LEXIS 38444 (SDNY Mar. 5, 2024) ....................................................7, 15

*Smith v Bayer Corp.*,
    564 US 299 (2011)...........................................................................................................11

*Smith v Pennington*,
    352 F3d 884 (4th Cir. 2003)............................................................................................11

*Tardif v. City of New York*,
    991 F. 3d 394 (2d Cir. 2021)...........................................................................................11

*Ting Qiu Qiu v Shanghai Cuisine, Inc.*,
    2019 US Dist LEXIS 198794 (SDNY Nov. 14, 2019) .....................................................21

*Zellner v. Summerlin*,
    494 F.3d 344 (2d Cir. 2007)............................................................................................10

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) .............................................................................................................10

Fed. R. Civ. P. 11 ....................................................................................................................11

Fed. R. Civ. P. 12(b)(6)...........................................................................................................10

U.S. Const. amend I...........................................................................................................*passim*

## PRELIMINARY STATEMENT

Defendants' motion requires the Court to stick its head in the sand and declare that people involved in protests, arrested for protesting, were somehow not targeted for First Amendment conduct. It requires pretending "and/or" means "and." And it threatens to make a mess of *American Pipe* doctrine: If Plaintiffs here are not covered by the class in *Sow*,[1] then no plaintiffs' lawyer would ever counsel anyone to "rely on the pending class action in lieu of filing their own protective lawsuits." *Monroe County Emples.' Retirement Sys. v YPF Sociedad Anonima*, 980 F Supp 2d 487, 491-492 (SDNY 2013).

As set out below, Defendants' motion is on faulty ground. Each Plaintiff was arrested or assaulted at a protest specifically identified as the subject of the underlying class action, including by a Court Order. Order, *In re Policing*, ECF No. 663. And the injuries here are severe: Permanent scarring and brain injuries from batons to the head, among other things. There is no basis to suggest Plaintiffs do not receive *American Pipe* tolling. And Defendants' *Monell* arguments are, by their own concession, barred by collateral estoppel. The motion should be denied.

## FACTUAL STATEMENT

As relevant to Defendants' arguments, there are essentially three relevant factual pieces: (1) what happened to each of the Plaintiffs, (2) the litigation history of the consolidated protest cases, and in particular the class certified in *Sow*, and (3) the policies at issue in *Sow* and alleged here. Unfortunately, Defendants' motion skimps heavily on facts, taking barely a single page to try to describe a 66-page complaint (to say nothing of the background in *Sow*). While the operative complaint provides full detail, those narrower fact issues are described in basic detail below.

### A. Plaintiffs are assaulted and arrested as part of protest enforcement, and subjected to protest-specific arrest processing procedures.

---

[1] Terms and cases are defined in the body of the memorandum below.

Plaintiffs in this case were all targeted for their First Amendment protected activity during the New York City protest marches in opposition to police misconduct and in support of police reform from May 28, 2020 through no earlier than November, 2020. ECF No. 25 ("FAC") ¶ 27. Each of them attended one of the protests specifically identified as a subject for discovery in the consolidated cases — which included a global class action, called *Sow* — in front of Judge McMahon, in *In re New York City Policing During Summer 2020 Demonstrations*, 20-cv-8924 ("*In re Policing*"). FAC ¶¶ 132a;[2] 74b, 94b, 116b, 144b, 176b. Below are their experiences.

### 1. Adewale Olukayode.

On June 3, 2020, Adewale Olukayode was at a protest on 14th Street, taking photographs of a Black Lives Matter protest. FAC ¶¶ 72b-75b. That protest involved a long march — and traveled uptown to 5th Avenue and 59th Street, where it was blocked by a full line of NYPD officers. FAC ¶¶ 76b-77b. Those officers brutally assaulted protesters and Mr. Olukayode. Without any justification at all, an officer struck Mr. Olukayode in the face with a baton, above his left eye. FAC ¶ 78b; *accord, In re NY City Policing During Summer 2020 Demonstrations*, 548 F Supp 3d 383, 401 (SDNY 2021). The strike was intended to retaliate for Mr. Olukayode's association with the protest and for his exercise of his First Amendment right to record police. FAC ¶ 79b.

After being struck, Mr. Olukayode began to bleed excessively, got dizzy, and fell off the sidewalk twisting his ankle. FAC ¶¶ 80b-81b. His expensive, professional camera was broken. And the facial strike left a permanent, visible scar. FAC ¶¶ 86b-87b.

Mr. Olukayode was taken to the hospital after waiting for an ambulance to arrive for 20 minutes and waiting another 30 minutes for it to depart. FAC ¶ 83b. At the hospital, he received four stitches in his forehead, for a facial laceration (caused by the baton strike) that was approximately 6-7

---

[2] Defendants are correct that "there are duplicate paragraphs numbered '72' through '133' [] due to an apparent formatting error" in the FAC. DMOL at 3 n. 3. For convenience, below, Plaintiffs refer to the first set as 72a-133a and the second as 72b-133b.

centimeters in length and 3-4 millimeters in depth with open unequal borders." FAC ¶¶ 85b-87b. He also received an x-ray for his ankle, and was unable to even walk for 3 weeks following the assault. FAC ¶¶ 85b-88b.

### 2. Michelle Moran.

On May 29, 2020, Michelle Moran attended a protest at the Barclay's Center in Brooklyn. FAC ¶¶ 92b-94(b). That protest involved a march down Flatbush, which resulted in Ms. Moran being at Warren St. and 5th Avenue some hours later, at 10:30 p.m. FAC ¶¶ 93b-95b.

Without any dispersal orders, NYPD began arresting people. FAC ¶¶ 96b-97b. When her brother was arrested, Ms. Moran asked why. FAC ¶ 98b. She was told to back up, and before any chance to comply, she was brutally assaulted. FAC ¶¶ 99b-100b.[3] An officer threw Ms. Moran into the hood of a police car, causing bruising to her back, extreme pain, and fracturing her wrist. FAC ¶¶ 100b-101b. She then crumpled down from the car to the ground. FAC ¶ 102b.

Ms. Moran went to the hospital, where, using x-rays, doctors diagnosed her with a severe wrist fracture. FAC ¶¶ 104b-106b. Her wrist was bandaged and placed in a cast, which she wore for three weeks. FAC ¶¶ 106b-107b.

### 3. Mor Talla Ndiaye.

On May 30, 2020, Mor Talla Ndiaye joined a protest march from Harlem that ultimately ended for Mr. Ndiaye at 7th Avenue and 24th Street. FAC ¶¶ 114b-117b. At around 7:00 p.m., Officers demanded protesters get on the sidewalk — but Mr. Ndiaye was already *on* the sidewalk. FAC ¶¶ 118b-119b. Despite that, and without any cause at all, an NYPD Sergeant began to charge and prepared to tackle Mr. Ndiaye. FAC ¶¶ 120b-123b. While he tried to avoid the assault, it was successful. *Id.* And another officer hit Mr. Ndiaye with a bicycle at full speed, on his leg, causing a

---

[3] Plaintiffs believe it is clear from the complaint Ms. Moran had no chance to comply — particularly reading the facts alleged in the light most favorable to her. But to the extent Defendants assert otherwise, Plaintiffs respectfully seek leave to clarify by amendment.

severe injury.  FAC ¶¶ 124b-125b.  Mr. Ndiaye fell to the ground, where multiple members of the NYPD jumped on top of him and ripped his shirt off.  FAC ¶ 126b.  Officers applied extremely tight cuffs, which they refused to loosen, and kept him in custody for 15 hours at a mass arrest processing center.  FAC ¶¶ 127b-132b.  He was charged with resisting arrest and two counts of disorderly conduct.  FAC ¶¶ 133b.  But when Mr. Ndiaye went to the criminal court to pick up a copy of the charges, he was told it was not going forward and was dropped.  FAC ¶ 135b.

The damage to Mr. Ndiaye's leg is severe.  He could not even walk for two weeks after the incident.  FAC ¶ 136b.  To this day, he continues to experience severe pain, and Mr. Ndiaye is no longer able to run, walk consistently for long periods of time, or jump.  FAC ¶¶ 136b-138b.

### 4.  *Maximillian Silver.*

On September 17, 2020, Maximillian Silver participated in a protest that marched from Tribeca to the West Side Highway.  FAC ¶¶ 142b-144b.  Protesters obeyed commands to get on the sidewalk.  FAC ¶¶ 146b-148b.  NYPD, however, then illegally attempted to stop the protest from lawfully continuing on the sidewalk — even though the protest was not obstructing vehicular or pedestrian traffic.  FAC ¶¶ 148b-150b.

Although Mr. Silver complied with every command, he was brutally assaulted and brought to the ground.  FAC ¶¶ 151b-155b.  Officers had Mr. Silver facedown on the ground and placed significant pressure on his back.  *Id.*  And they applied plastic flex-cuffs so tightly that he lost feeling in his fingers.  FAC ¶¶ 156b-157b.  Though he and other arrestees tried to alert the officers to that fact, disobeying written NYPD policy — though following informal practices — the officers simply ignored the requests to adjust the flex-cuffs.  FAC ¶¶ 156b-158b.

After his complaints continued for some time, Captain Julio Delgado, while smoking a cigar, cut the zip-ties off, not with the appropriate, manufacturer-supplied tool, but with a wire-cutter.  FAC ¶¶ 159b-160b.  The wire-cutter dug into and cut Mr. Silver's skin, because of just how improperly tightly

the zip-ties were applied.  FAC ¶ 160b.  Mr. Silver was then processed at a mass arrest processing center and spent 9 hours in custody.  FAC ¶¶ 164b-168b.  He was charged with obstruction of governmental administration, but those charges were dismissed, consistent with his innocence.  FAC ¶¶ 169b-170b.

### 5.  *Blake DeVlieger*

Blake DeVlieger attended a protest on Bedford Avenue in Brooklyn on May 30, 2020.  FAC ¶¶ 175b-176b.  That protest was encircled on all sides — often called "kettling" — by NYPD, while an NYPD helicopter flew low overhead.  FAC ¶¶ 177b-180b.  NYPD deployed pepper spray into the crowd, used batons to strike protesters, and shoved protesters.  FAC ¶ 181b.  Mr. DeVlieger was struck in the head with a baton.  FAC ¶ 182b.  He felt a sharp crack on his head, and when he touched his head, found it was severely bleeding.  FAC ¶¶ 182b-184b.  He was helped by a medic, but the NYPD interfered with that care.  FAC ¶¶ 185b-187b.

Mr. DeVlieger went to the emergency room, where he received five stitches and was diagnosed with a concussion.  FAC ¶¶ 188b-189b.  He now has a scar on the back of his head that is sensitive to touch.  FAC ¶ 190b.  He also has begun to suffer from chronic and frequent migraines, and experiences light sensitivity.  *Id.*  He has also been diagnosed with complex post-traumatic stress disorder because of the assault.  FAC ¶ 191b.

Mr. DeVlieger previously worked as a model.  FAC ¶ 193b.  But because of the photosensitivity that comes from the brain injury, he cannot work in that role anymore — and though he works on sets still, he requires significant accommodation to even make the work tolerable.  FAC ¶¶ 193b-198b.

### B.  History of the *Sow* class action.

As relevant here, in the *Sow* First Amended Complaint ("*Sow* FAC"), there were two class definitions.  The parties appear to agree that if Plaintiffs were arguably members of the *Sow* Proposed Class (definition below), they receive tolling, while if they were not, they do not.  A history of the

relevant dates is in the FAC in paragraph 36, but the upshot is that if Plaintiffs are members of the *Sow* Proposed Class, the claims are timely.

That definition, in two freestanding parts, is as follows:

(a) all persons who were targeted for their First Amendment protected activity including being, inter alia, unlawfully detained and/or arrested without fair warning or ability to disperse, subjected to excessive force, and/or subjected to unreasonably lengthy and unsafe custodial arrest processing during the New York City protest marches in opposition to police misconduct and in support of police reform from May 28, 2020 through no earlier than November, 2020 (the "Protests"); or

(b) all persons who have been or will be unlawfully detained and/or arrested without fair warning or ability to disperse since May 28, 2020, pursuant to the NYPD's policy, practice, and/or custom of, without legal justification, conducting retaliatory arrests and detentions of individuals protesting in opposition to police misconduct and in support of police reform.

*Sow* FAC ¶ 510 ("*Sow* Proposed Class"). Clause (a) essentially boils down to "all persons who were targeted (during the Protests) for their First Amendment activity," while Clause (b) essentially boils down to "all persons who were arrested without fair warning or ability to disperse or detained unlawfully (since May 28, 2020) pursuant to [certain] NYPD policies."

The time-range of this class **explicitly** covered anyone arrested between "May 28, 2020 through no earlier than November, 2020." And the Court later confirmed that the period covered by the class went through "January 18, 2021." Order, *In re Policing*, ECF No. 663. All Plaintiffs here fall in that time range, and Defendants offer no basis in the text of the definition for their *ipse dixit* otherwise.

A class was ultimately certified in *Sow*.[4] But the certified class was narrower, and framed differently: It covered 18 specified protests, within delineated boundaries. *Sow*, ECF No. 176 ("*Sow* Stipulation and Order") ¶ 32 ("*Sow* Certified Class"). It also limited class membership to people

---

[4] That settlement came about after at least 10 rounds of discovery sanctions, and after the City's lead lawyer was caught forging documents to cover up discovery misconduct and abruptly fired.

arrested, unlike (for example) the members of the Clause (a) class that would have claims for being subject to force without any arrest.  *Id.*

### C.  Policies and claims at issue in *Sow*.[5]

In *Sow*, the policies and practices challenged covered a wide array of conduct.  As Judge McMahon described it in largely rejecting the City's motion to dismiss, plaintiffs there "alleged that the NYPD had a policy or custom of using excessive force and mass arrests to effectuate crowd control at First Amendment-protected activities."  *In re NY City Policing During Summer 2020 Demonstrations*, 548 F Supp 3d 383, 396 (SDNY 2021).  The policies at issue included, for example, the longstanding practice the City has of "detaining and fully processing people arrested for non-criminal violations who were otherwise eligible to be processed and released with" DATs "based on the fact that they participated in demonstrations."  *Sow* FAC ¶ 429(a); see also *Mandal II*, 2007 WL 3376897, at *2.  *Accord, e.g., Dinler v City of NY*, 2012 US Dist LEXIS 141851, at *67-69 (SDNY Sep. 30, 2012).  It also included claims about, explicitly, "NYPD's Policy and/or Practice of Using Excessive Force to Control the Speech of Protestors."  *Sow* FAC at 61.

To start with what Defendants appear to dispute, the *Sow* FAC targeted force-only issues — and the proposed class included those subjected only to force (as is clear from the multiple disjunctive uses of "and/or" in clause (a) of the *Sow* Proposed Class).  While Defendants falsely claim "the *Sow* class never intended to represent the interests of individuals who were not arrested" (DMOL at 8), that assertion is a facile and bad faith reading of the complaint.  Just as the paragraphs Defendants cite discuss arrests, dozens, if not hundreds, of paragraphs in the *Sow* FAC discuss force without any reference to arrest.  *See, e.g., Sow* FAC ¶¶ 463 ("Defendants used types and levels of force that were

---

[5] Defendants attempt to distinguish between the *Sow* complaint and the others in *In re Policing*.  *See, e.g.,* DMOL at 11.  But the *Sow* FAC — deliberately — "incorporate[d] by reference the factual allegations in the complaints in related cases," including *Payne*, *Wood*, *Sierra*, and *People*.  *Sow* FAC at 12 n. 2.  So the suggestion that the incidents mentioned in other complaints were absent from the complaint in *Sow* is simply mistaken.

excessive and unnecessary force against the Plaintiffs and other similarly situated protestors.")[6]; 119; 463 ("Defendants used types and levels of force that were excessive and unnecessary force against the Plaintiffs and other similarly situated protestors."); 464-466; 467 ("In many cases, Defendants used types of force, such as deploying pepper spray, that they knew, or should have known, would impact numerous people at one time, and/or cause lasting pain, suffering, and/or injury, without making individualized or otherwise appropriate determinations about whether those uses of force were necessary, justified, or reasonable under the circumstances."); 468-476; 512 (common questions for the class include, without reference to arrest, "Whether Defendants violated the Class members' rights to be free of unreasonable and excessive force"; "Whether Defendants' use of unreasonable and excessive force was the result of a municipal policy or practice;" and "Whether Defendants' use of unreasonable and excessive force violated the First, Fourth and Fourteenth Amendments to the United States Constitution"); 533-536 (stand alone, force-only claim). Plus, most instances referencing force and arrests in the *Sow* FAC use a disjunctive "or" or "and/or" — like, for instance: "in many cases, Defendants apparently permitted, acquiesced in, and/or facilitated the speech and/or other expressive conduct in which Plaintiffs were engaging, before suddenly using force ***and/or*** making arrests." *Id.* ¶ 551 (emphasis added).

If the complaint itself were not clear enough, Judge McMahon's rejection of the City's motion to dismiss the force-only claims across the entire *In re Policing* litigation should put the claim to bed:

> Plaintiffs allege that there exists a widespread practice of trying to control crowds at protests — notably those with political overtones, which plainly implicated Plaintiffs' First Amendment rights — by employing excessive force (whether by baton or bicycle is irrelevant) and by making mass arrests without probable cause …  All three complaints also plead specific instances of other practices — perfectly permissible police practices in the right context, such as the use of batons, bikes, and pepper spray — in an impermissible manner and/or for impermissible purposes during the BLM protests  Again drawing all inferences in favor of the

---

[6] Plaintiffs include this to compare to the string cite in DMOL at 8.  If Defendants are correct that paragraphs like the ones they cite show that arrests were covered, the same logic requires that paragraphs that discuss force — without *any* reference to arrest — means force-only claims were covered.

pleader, those allegations are sufficient as well.

In short, Plaintiffs identify a number of police practices that were allegedly wrongfully used or abused during the BLM protests and pleads facts from which it could be inferred that this was not some 'one off' instance of misuse of these practices, but had been part and parcel of the NYPD's 'arsenal' for dealing with political protests for that past two decades. That sufficiently pleads a custom or policy of using excessive force and making false arrests at large protests throughout New York City.

[...]

During a June 4 press conference, a reporter asked Mayor de Blasio about a widely circulated video showing NYPD officers hitting protesters with batons at a protest on June 3. When asked if he condoned the officers' behavior, the Mayor denied having seen the video (though it was allegedly shown to him the previous night), and responded: 'It is the nature of New York City and the restraint shown by the NYPD that we're trying to give people extra space, if they do it the right way — if they respect the instructions of the NYPD and do no violence, no harm — don't commit any violence' Defendants insist that this statement shows that the Mayor disapproved of the officers' use of force.

But it is also plausible to infer from that statement that Mayor de Blasio chose to ignore widely circulated evidence of the alleged use of excessive force by the police, and instead lauded officers for their 'restraint.' Plaintiffs are, for now, entitled to the latter inference.

*In re NY City Policing During Summer 2020 Demonstrations*, 548 F Supp 3d 383, 402-406 (SDNY 2021) (cleaned up).

Defendants also falsely state the "*Sow* FAC also explicitly detailed that specific named Plaintiffs [were] all ... arrested." DMOL at 8. Not true. While many *Sow* Plaintiffs were arrested, Barbara Ross was brutally assaulted without arrest. *Sow* FAC ¶¶ 208-219. And accordingly, that she was proposed as a class representative — tracking Defendants' own logic (DMOL at 8) — shows that victims of force-without-arrest were intended to be members of the proposed class. Defendants' own reasoning shows that must be so given the allegation that a force-only plaintiff could adequately serve as a representative: She necessarily had the same claims as the force-only members of the class.

Likewise, the *Sow* complaint targeted a policy of retaliatory arrests based on *perceived* associations: Targeting people not just because they are "*in*" a protest, but also because they are in "proximity to a perceived" protest. *Sow* FAC ¶ 466. That is, as detailed in Judge Sullivan's opinion in

9

*Dinler*, there is a history of NYPD officers arresting non-protesters — that is, people at protests as "legal observers, as curious bystanders, or for wholly unrelated reasons, such as walking to or from work" — because of a perceived association with the protest. 2012 US Dist LEXIS 141851, at *45-46. *Sow* explicitly included such claims, *see, e.g., Sow* FAC ¶¶ 466, 477, 484 (allegations Defendants targeted people "based on their position in or proximity to a perceived group"), and covered those by proposing a class that included arrests or force "during" a protest, rather than "at" one. *Sow* Proposed Class, clause (a).

The FAC and claims here track, largely verbatim for *American Pipe* reasons, the claims in *Sow*.

## STANDARDS OF REVIEW

The applicable federal rules require only that a plaintiff plead "a short and plain statement of the claim" to entitle them to discovery. *See* Fed. R. Civ. P. 8(a)(2); *see also, e.g., Shamir v. City of N.Y.*, 804 F.3d 533, 556 (2d Cir. 2015). Under the familiar standard of review applicable to Defendants' partial motion to dismiss under Rule 12(b)(6), the Court must accept as true all plausibly pleaded allegations in the FAC and draw all reasonable inferences therefrom in Plaintiff's favor. *See, e.g., See Case, et al. v. City of N.Y., et al.*, 233 F.Supp.3d 372, 382 (SDNY 2017) (citing cases). If the allegations in the pleadings sufficiently "raise the right to relief above the speculative level," dismissal is inappropriate. *Bell Atl. Corp. v. Twombly*, 550 US 544, 570 (2007). To the extent there are any disputed facts, they are for a jury to decide. *See, e.g., Zellner v. Summerlin*, 494 F.3d 344, 368, 371 (2d Cir. 2007) (citing cases). As long as there is enough factual matter to 'nudge[ plaintiffs'] claims…'across the line from conceivable to plausible,'" the case should proceed to discovery. *Ashcroft v. Iqbal*, 556 US 662, 680 (2008), *quoting Twombly*, 550 U.S. at 570.

As the Second Circuit, and this Court, have recognized, allegations in other complaints or official reports can provide sufficient support for allegations. *See, e.g., In re NY City Policing During Summer 2020 Demonstrations*, 548 F.Supp.3d 383, 401-404 (SDNY 2021).

As far as *American Pipe* tolling is concerned, the question is not whether Plaintiffs *in fact* were members of a proposed class. Instead, "[w]here the scope of the class definition in an initial complaint '***arguably***' includes particular bystander plaintiffs, they remain entitled to *American Pipe* tolling unless and until a court accepts a new definition that unambiguously excludes them." *Defries v Union Pac. R.R. Co.*, 104 F.4th 1091, 1099 (9th Cir. 2024) (emphasis added), *discussing Sawtell v E.I. Du Pont De Nemours & Co.*, 22 F3d 248, 253 (10th Cir. 1994) *and Smith v Pennington*, 352 F3d 884, 895 (4th Cir. 2003).

Finally, Defendants cannot make new arguments on reply. *Tardif v. City of New York*, 991 F. 3d 394, 404 n.7 (2d Cir. 2021).

## ARGUMENT

As explained below, Defendants' arguments all fail.[7] "Where the scope of the class definition in an initial complaint '***arguably***' includes particular bystander plaintiffs, they remain entitled to *American Pipe* tolling unless and until a court accepts a new definition that unambiguously excludes them." *Defries*, 104 F.4th at 1099 (emphasis added). The point of that rule, like "the whole point of *American Pipe*," "is to allow unnamed class members to rely on the pending class action in lieu of filing their own protective lawsuits," and save courts from a deluge of me-too, protective filings. *Monroe County Emples.' Retirement Sys. v YPF Sociedad Anonima*, 980 F Supp 2d 487, 491-492 (SDNY 2013).

Analyzing membership in a proposed class — performed with "arguably" gloss described above — is "subject to the general principles of contract interpretation" or other textual interpretation. *Peoples v Annuci*, 2021 US Dist LEXIS 60909, at *6 (SDNY Mar. 30, 2021). *Cf., e.g., Doe v. Pataki*, 481 F.3d 69, 75 (2d Cir. 2007) (same for consent decrees). So, "[t]he primary objective of a court in

---

[7] Defendants previously made other arguments for dismissal, relying on, essentially, the virtual representation theory barred by *Smith v Bayer Corp.*, 564 US 299 (2011). *See, e.g.*, ECF No. 21 at 9-12. Plaintiffs served a Rule 11 notice and letter about (among other things) those arguments (*see* ECF Nos. 23 and 23-1), and Defendants appear to have now abandoned those arguments.

interpreting a contract is to give effect to the intent of the parties as revealed by the language of their agreement." *Compagnie Financiere v. Merrill Lynch*, 232 F.3d 153, 157 (2d Cir. 2000).[8]

The parties seem to agree that much of this case turns on membership in the *Sow* Proposed Class.

## I.    Plaintiffs Were Members of the *Sow* Proposed Class.

The heart of Defendants' motion is their assertion that Plaintiffs did not fit in the *Sow* Proposed Class. Defendants immediately fall off track, however, by failing to engage with the actual class proposed — and selectively citing paragraphs in the *Sow* FAC while studiously ignoring the many other paragraphs that undermine their selective reading.

The two potentially relevant definitions here each have a number of clauses, but they boil down to simple-to-apply criteria. First, Clause (a) covers (1) "all persons," (2) targeted "for their First Amendment protected activity," (3) "during … [the] Protests," and provides a non-exhaustive list of the kind of targeting might be involved. *Sow* Proposed Class Definition. Second, Clause (b) covers (1) "all persons" who were (2) "arrested" or "detained," (3) without fair warning or ability to disperse, (4) since May 28, 2020, and (5) pursuant to NYPD's policies and practices related to protests.

### A.    Plaintiffs are members of Clause A of the *Sow* Proposed Class because they were arrested for First Amendment conduct during the Protests.

Defendants do not appear to dispute Plaintiffs meet the "all persons" criteria. Rather, they argue Plaintiffs were not engaged in First Amendment activity and that some of the protests at issue were not part of the defined "Protests" in the *Sow* Proposed Class.[9]

*1.    Plaintiffs were engaged in black-letter First Amendment activity.*

---

[8] Because the *Sow* Proposed Class is not ambiguous, there is no need for parol evidence. But if the Court believes it *is* ambiguous, that ambiguity is a subject for discovery.

[9] Defendants do not appear to dispute that the protest at issue was part of the defined "Protests" in the *Sow* Proposed Class definition.

Each Plaintiff was at and participating in a protest when they were arrested or assaulted. Yet, bafflingly, Defendants assert "none of [certain] Plaintiffs allege they were 'targeted' while engaging in First Amendment activity." DMOL at 10.

As an example, Defendants say that alleging an officer hitting Plaintiff Olukayode over the head with a baton, ***at a protest***, somehow fails to "fails to allege to be ***participating in a protest*** or recording police." DMOL at 10. Nonsense. At the time he was assaulted, he had been "follow[ing] the protest while continuing to photograph and document the first amendment activity." FAC ¶ 76b. He was associated with the march and assaulted because of that — and because of his conduct "record[ing] members of the NYPD" — he was assaulted. FAC ¶ 79b. How this is remotely "conclusory" is left unexplained. DMOL at 10. So too for Plaintiff Moran, who merely asked why someone was being arrested ***at a protest*** — easily something within the "significant" range of verbal "challenge" to police that is completely protected by the First Amendment (*Houston v. Hill*, 482 US 451, 461 (1987)) — and that minimal challenge triggered extreme violence, presumably because of the perceived message of the protest. To call that question "involving herself in an arrest-in-progress of another" is only to confirm the arrest and assault were based on protected speech at a protest. DMOL at 10. Indeed, in *In re Policing*, text messages surfaced revealing exactly this motivation for violence: During major protests on June 3 and 4, a Captain was texting other officers referring to assaulting protesters as "play," was told by a subordinate to "kick their ass," and says "LET'S HAVE FUN" referring to a planned, brutal kettle in Mott Haven in the Bronx. *Rodriguez v. City Of New York*, 21-cv-10815, ECF No. 107-1 (SDNY) (unsealing those messages, after the City fought to conceal them).

Even more nonsensical is Defendants' argument about Plaintiff DeVlieger.[10] Defendants directly admit "he was present at a protest when at some point he was encircled by police onto a sidewalk"

---

[10] DeVlieger's movement was after the kettle turned into a free-for-all assault on protesters — it hardly "[s]uggest[s] he was in fact free to leave" when the kettle formation remained. DMOL at 10 n. 9.

and then "hit on the head by an unknown NYPD officer." DMOL at 10. That is, he was "at a protest" — an obvious First Amendment activity. No more is required — and indeed, no more was required of the *Sow* Plaintiffs themselves. *Accord, e.g., Sow* FAC ¶¶ 129-420 (basically identical allegations for the individual *Sow* Plaintiffs). As Defendants acknowledge elsewhere, "[a]ny ambiguities in the Sow's proposed class" can be "readily resolved by an examination of the" rest of the *Sow* FAC. DMOL at 8. And the fact that the allegations are parallel between the Plaintiffs here and the *Sow* Plaintiffs show that the "First Amendment" piece of the proposed class definition covers Plaintiffs here. Plus, surely Defendants would concede that members of the NYPD do not randomly or routinely hit people over the head with batons — and as alleged in the complaint, the only apparent cause here is Plaintiffs' First Amendment activity and message.

Also bizarre is Defendants' claim that Plaintiff Silver was not targeted for First Amendment activity when they admit he was arrested for exercising his right to remain protesting on the sidewalk. DMOL at 11-12. As the complaint alleges, and must be presumed true, no one in the protest was obstructing vehicular or pedestrian traffic. FAC ¶¶ 148b-150b. To arrest a protester — or even issue the order to disperse — "[t]he Second Circuit requires a showing that the putative offender was 'actually and immediately blocking' the pedestrian or vehicular traffic in question." *Case v. City of N.Y.*, 408 F. Supp. 3d 313, 320 (SDNY 2019), *quoting Zellner v. Summerlin*, 494 F.3d 344, 372 (2d Cir. 2007). And since Defendants admit Silver was arrested for being on the sidewalk and offer no suggestion he was "actually and immediately blocking" anything (or a basis to disregard that well-pled fact in the complaint), his "failure to comply with an (unjustified) order … cannot, without more, create the predicate probable cause to justify [his] arrest." *Jackson v. City of N.Y.*, 939 F. Supp. 2d 219, 230 (E.D.N.Y. 2013); *Hilderbrandt v. City of N.Y.*, 2014 US Dist. LEXIS 128170, at *10 (E.D.N.Y. Sep. 11, 2014); *Dowling v. City of N.Y.*, 2013 US Dist. LEXIS 142108, at *13-14 (E.D.N.Y. Sep. 30, 2013). And he was unlawfully told to leave the sidewalk ***because*** he was at a protest.

14

Put bluntly, Defendants arguments that people brutally assaulted — including with force that caused serious brain injuries — or arrested at protests were somehow not engaged in First Amendment activity is frivolous. They cite no authority for it, because there is none.

>   *2. Plaintiffs were all at least one of unlawfully detained, arrested without fair warning or ability to disperse, subjected to excessive force, or subjected to unreasonably lengthy and unsafe custodial arrest processing.*

Clause (a) of the *Sow* Proposed Class then incorporates people subjected to four different kinds of conduct: People who were (1) "unlawfully detained," (2) "arrested without fair warning or ability to disperse," (3) "subjected to excessive force," or (4) "subjected to unreasonably lengthy and unsafe custodial arrest processing." *Id.* It separates each of these with an independent, disjunctive "and/or." *See, e.g., Fairfield Sentry Ltd. v Citibank, N.A.*, 630 F Supp 3d 463, 484 (SDNY 2022) ("repeatedly us[ing] 'and/or' [serves] to show disjunctive meaning").

In the broader *In re Policing* cases, the Court already rejected exactly the kind of argument Defendants make here. It addressed substantively identical construction in *Sierra* — "All persons who were detained, arrested, and/or subject to force" — and found force-without-arrest claims were encompassed, even if the force was indirect. *Sierra v City of NY*, 2024 US Dist LEXIS 38444, at *2-3 (SDNY Mar. 5, 2024).[11] Whether by estoppel (see Point II below), or just because its reasoning correct, the decision in *Sierra* shows why Defendants' arrest-only reading cannot be found in the text of the *Sow* Proposed Class, any more than it could be found in the certified class in *Sierra*.

>   *3. Plaintiffs were subjected to that conduct at the Protests.*

The *Sow* FAC defines "Protests" as "New York City protest marches in opposition to police misconduct and in support of police reform from May 28, 2020 through no earlier than November, 2020." *Sow* Proposed Cass. Defendants largely seem to concede on the *text* of the *Sow* Proposed Class

---

[11] While Defendants attempt to dispute its relevance, saying only "the terms of the Sierra settlement agreement" are "inapposite here," without explaining how basically the same exact construction, on the same docket, could mean something completely different. DMOL at 9.

each Plaintiff was arrested or assaulted at (1) a New York City protest march; (2) in opposition to police misconduct and in support of police reform; and (3) those arrests/assaults were between "March 28, 2020" and "November[] 2020." *Id.*

### B. Plaintiffs also arguably fit under Clause (b) because they were arrested pursuant to NYPD's protest policies.

Clause (b) covers (1) "all persons" who were (2) "arrested" or "detained," (3) without fair warning or ability to disperse, (4) since May 28, 2020, and (5) pursuant to NYPD's policies and practices related to protests. Defendants do not appear to dispute (1), (2), or (4).

First, for substantially[12] the reasons discussed above, the Plaintiffs that were arrested were arrested without any fair warning or ability to disperse. And even if they *did* defy an order, mere defiance is not enough for probable cause. *Fana v City of NY*, 2018 US Dist LEXIS 51579, at \*25.

Second, the FAC alleges Plaintiffs were subjected to the City's protest-related policies. *Sow* challenged these practices directly, as do Plaintiffs here. And confirming Plaintiffs' arrests were under those policies, they were processed in a mass-arrest processing center set up *for* the protests, kettled, assaulted brutally, and the like. These are the exact claims made in *Sow*. *See generally, In re Policing*, 548 F Supp 3d at 392-417.

In short, Plaintiffs here fit exactly into the *Sow* claims based on the long line of cases about situations in which arrest processing is dragged out because perceived participation in or association with a protest. *Dinler*, 2012 US Dist LEXIS 141851, at \*67-69. *See also Allen v. City of New York*, 466 F. Supp. 2d 545, 546 (S.D.N.Y. 2006) (claims that "the police deliberately held [protesters] in custody for an unnecessarily long period of time in order to delay their arraignment in Criminal Court"); *Haus v. City of New York*, 03-cv-4915 (RWS)(MHD) 2006 WL 1148680, \*1 (S.D.N.Y. April 24, 2006) (claims

---

[12] The major difference is that for Clause (b), the "without fair warning" and "ability to disperse" prongs are part of the definition rather than items on a non-exhaustive list.

the City had police "engage in pre-emptive mass arrests and to subject arrestees to delayed and arduous post-arrest processing"); *Schiller v City of NY*, 2008 US Dist LEXIS 4253, at *4, n 1 (SDNY Jan. 23, 2008) (challenge to the City's "practice of detaining all arrestees, no matter how minor the infraction, rather than issuing summonses on the street" at protests). That is what Clause (b) covers — or at a bare minimum "arguably" covers — and Defendants' arguments otherwise fail.

### C. Defendants' "Date Referenced in <u>Sow</u>" argument is incoherent.

As noted above, *American Pipe* tolling applies to anyone who is a member of the putative class. Defendants make two related mistakes in analyzing this issue

*1. The <u>Sow</u> Proposed Class has no reference to specific dates.*

Defendants err in their approach by eschewing the actual class definition, and trying to elide to something else entirely: "dates" that are referenced in the complaint. But specified dates were not part of the class definition: The *Sow* Proposed Class covered, more or less, anyone arrested or subjected to force at one of the "Protests," in a date range "between "May 28, 2020 ***through no earlier*** than November, 2020." *Sow* Proposed Class Definition (emphasis added).

True, a party ***can*** define a class by dates — and the class ultimately certified did. But in the *Sow* Proposed Class, the definition turned on those subjected to Defendants' policies — those described by Judge McMahon as "part and parcel of the NYPD's 'arsenal' for dealing with political protests for that past two decades," that reflect a "custom or policy of using excessive force and making false arrests at large protests throughout New York City." *In re Policing*, 548 F Supp 3d at 402. So, Defendants' attempt to cut off "any arrest [or use of force] after June 6, 2020" finds no support in the class definition. DMOL at 11. *See also,* Point I(D) below (discussing the common use of policy-based class definitions for police cases).

Moreover, Defendants themselves promptly undermine their argument, even on its own terms. They note that allegations in *Payne* explicitly included the date(s) that, for example, Plaintiff

Silver was arrested and assaulted.  *Id.*  But in doing so, Defendants strategically omit that the *Sow* FAC explicitly "incorporate[d] by reference the factual allegations in the complaints in related cases," including *Payne* (by name).  *Sow* FAC at 12 n. 2.  So, in fact, September 17, 2020 was "a date that *is* [] referenced in *Sow*."  DMOL at 11 (emphasis added).  As were countless others after June 6, through that incorporation.

Past there, if things were at all unclear from the *Sow* FAC, the subsequent litigation erased that ambiguity.  Perhaps the most clear evidence Defendants' argument is baseless, in *In re Policing,* the City was ordered *by the Court* to give positions in discovery (after a failure to provide those positions in the normal course) "*for each putative Sow class member arrested from May 28, 2020 to January 18, 2021,* at locations listed in Schedule A."  Order, *In re Policing*, ECF No. 663.[13]  So, at least according to Judge Gorenstein — who spent dozens, if not hundreds of hours supervising litigation in *In re Policing* — it was clear the putative class included dates through not only November, but at least January 18, 2021.  *Id.*[14]  In short, the notion that June 6 marked the end of the *Sow* Proposed Class is without any basis, and is belied by both the *Sow* Proposed Class itself and even a cursory glance at the docket.

### 2.  *Defendants' arguments about Schedule A locations are wrong.*

Defendants seem to concede that Plaintiffs Olukayode, DeVlieger, Moran, and Silver plausibly allege they were arrested at Schedule A locations.[15]  DMOL at 9; 11.  They contest that Plaintiff Ndiaye was at a Schedule A location, and that the Schedule A location for Silver was one of the Protests.

---

[13] In the context of this Order, Defendants' footnote suggesting that Schedule A did not reflect the *Sow* class (DMOL at 9 n. 7) is clearly just an attorney without basic familiarity with the *In re Policing* litigation making an unfortunate factual mistake about what was "obvious[]."

[14] Plus, throughout the litigation, the parties often clarified things like the fact that *Sow* "[sought] damages as well as declaratory and injunctive relief on behalf of putative classes that would include all individuals arrested between May 28th and November 2020, as well as all people who have been or will be subjected to the NYPD's practices of violently disrupting protests in the future".  Letter, *In re Policing*, ECF No. 168 at 2; *see also, e.g.,* ECF No. 341-2.

[15] And while Defendants correctly say Schedule A "does not function to incorporate it into the Sow pleadings or the proposed class definition," they then go on to say absence from Schedule A somehow *does* get incorporated.  DMOL at 9; *but see* DMOL at 10-11.

DMOL at 11-12.

To start, for the reasons Defendants themselves articulate, Plaintiff Ndiaye did not need to allege a Schedule A location (DMOL at 9):  Schedule A clarified things that were definitively in play.  But — as shown by the subsequent amendment of Schedule A to *add* protests — Schedule A was a discovery tool aimed at reducing the burden on the City in responding to discovery on a rocket docket, where its lawyers were constantly failing to live up to even the "most basic responsibilities of attorneys." Order, *In re Policing,* ECF. No. 598.  And Plaintiff Ndiaye alleges all that is necessary:  Participation in a protest march, at the height of the BLM protests on May 30th for that matter, about police misconduct.  FAC ¶¶ 113b-117b.[16]  But if a Schedule A location were required, Defendants' arguments about the exact path Schedule A Protest Nos. 15-17 took across many hours are issues for discovery — the facts read most favorably to Plaintiffs are that those protests included Ndiaye and across hours of marching, were at the place Ndiaye was assaulted.

Meanwhile, for Plaintiff Silver, the argument that a protest against "'the treatment of women detained while in Immigration and Customs Enforcement (ICE) custody,' [is] not a demonstration 'in opposition to police misconduct' and 'in support of police reform'" is specious.  DMOL at 11.  For one thing, ICE's vests literally say "POLICE."  But regardless, ICE are police, and protesting against their mistreatment of people in detention is a protest against police misconduct and in support of police reform.  The City does not explain its claim otherwise.  The complaint paragraph referenced in Schedule A literally describes the protest as one "seeking fundamental changes to law enforcement," and as its lead example of how "[s]ince the summer of 2020, the NYPD has continued its aggressive tactics towards protestors" advocating for such changes.  *Payne* Amended Complaint, *In re Policing,* ECF No. 54 ¶ 76.  And the next example in Payne (which is Schedule A Protest 71) is also one

---

[16] To the extent more detail on the subject of the protest is required, Plaintiffs can amend to provide it easily, and ask for leave to do so.

protesting ICE.  *Id.* ¶ 77.  So, obviously, protests related to ICE are about police misconduct.  The claim that a protest about the law enforcement tactics of ICE is not "a demonstration 'in opposition to police misconduct' and 'in support of police reform'" (DMOL at 11) is without any merit.

### D.  Defendants' complaints about the scope of the definition of the proposed class are misguided.

Next, Defendants turn to a claim that the class is somehow too "generalized" to toll anything.  DMOL at 12-14.  But the class here is nothing like that in the case Defendants cite — where there were genuinely "generalized grievances" by an "open-ended group."  DMOL at 13, *quoting Camotex, S.R.L. v. Hunt*, 741 F. Supp. 1086, 1091 (S.D.N.Y. 1990).  *Camotex* involved a case where there was no possible way to determine who was a class member — it was "so amorphous as to make it impossible to 'limit potential class members.'"  741 F. Supp. at 1091.

To start, classes over police conduct without reference to specific dates — but instead with reference to policies — are certified all the time.  And recall this is not a motion to certify the class, merely an inquiry into whether the class was so far off that it could not possibly provide the City notice.  The first and clearest example in the City is likely *Floyd v City of NY*, 959 F Supp 2d 540 (SDNY 2013) (final order), though it is an injunctive class.  There, a class was certified covering everyone subjected to the "stop and frisk" policy the City employed.  *Floyd v City of NY*, 283 FRD 153, 172 (SDNY 2012).  In the course of the RNC, Judge Sullivan certified damages classes for both conditions of confinement and excessive detention *as policies*, without reference to dates.  *MacNamara v City of NY*, 275 FRD 125, 151 (SDNY 2011).  And that is because, of course, there is no issue with "individualized grievances" when injuries "derive from a unitary course of conduct by a single system."  *Id.*  As Judge McMahon explained, everything here derived from exactly such a unitary course of conduct by a single system: the excessive force and mass arrests were "part and parcel of the NYPD's 'arsenal' for dealing with political protests for that past two decades."  *In re Policing*, 548 F Supp 3d 383, 402-406.  Across a variety of doctrinal areas, policy-based class definitions are common, and not inherently problematic

at all. *McBean v City of NY*, 228 FRD 487, 490 (SDNY 2005).[17]

Meanwhile, *Camotex* is just nothing like this case. (One of) the underlying class(es) proposed a securities class for all those who purchased or held silver futures, silver bullion, or refined silver in commercial quantities," which was impermissible because it did not sufficiently inform defendants of "the number and generic identity of potential plaintiffs in the action." *Id.* That is, it was just "all those who purchased" silver — not from a certain seller, not in a certain state (or even country), not even in a certain timeframe, meaing differently situated traders — "short traders, long traders, physical traders, consumers, and purchasers of products containing silver" — had necessarily different, "specialized grievances." *Id.* And the claims were expansive antitrust and RICO claims, arising out of a *general* monopoly in the silver market. More, the class *Camotex* relied on for tolling was rejected specifically because it failed to meet notice requirements, unlike the proposed class here, which was never tested — but would likely succeed like other policy-based police classes. So, it is hard to see — and Defendants draw no specific analogy beyond the general language — how *Camotex* can be analogous to the clearly defined class here.[18]

Here, for arrest-based class members, obviating any possible claim of amorphousness, the City was able to ultimately produce documents "for each putative Sow class member arrested from May 28, 2020 to January 18, 2021, at locations listed in Schedule A." Order, *In re Policing*, ECF No. 663.

---

[17] Covering class of women "who were subjected to defendants' policy, practice, and custom of strip searching pretrial detainees"; *accord Burley v City of NY*, 2005 US Dist LEXIS 4439, at *17 (SDNY Mar. 23, 2005) (class, like here, of protesters "subjected to the same unconstitutional DAT policy or practice"). *See also, In re AXA Equit. Life Ins. Co. COI Litig.*, 2020 US Dist LEXIS 145948, at *29 (SDNY Aug. 13, 2020) ("the Court certifies a nationwide Policy-Based Claims Class including all individuals who, on or after March 8, 2016, owned AUL II policies that were issued by AXA and subjected to the COI rate increase announced by AXA on or about October 1, 2015"); *Ting Qiu Qiu v Shanghai Cuisine, Inc.*, 2019 US Dist LEXIS 198794, at *7 (SDNY Nov. 14, 2019) (class of workers "subjected to Defendants' common policy of not paying" properly).

[18] Beyond that, as important context, *Camotex* also rejected "tolling by a 'pyramiding' of class actions, that is, allowing successive class actions of which plaintiff was a putative member to toll the statute of limitations." *Id.*

And indeed, for arrest-based claims, the City has extensive documentation and members of an arrest-based class are frankly simple to ascertain. So there can be no claim the proposed class was too generalized as far as arrest-based class members were concerned.

Similarly, for force-based class members, membership is not amorphous either: Putative class members were those subjected to force at those protests where the City mounted large responses. Limiting and determining membership is simple — it is only those people subjected to those policies that have been "part and parcel of the NYPD's 'arsenal' for dealing with political protests for that past two decades," including "employing excessive force (whether by baton or bicycle is irrelevant)." *In re Policing*, 548 F Supp 3d 383, 402-406. Unlike determining who bought silver in any capacity or form, from anyone, ever, figuring out who the City's NYPD assaulted, at protests, between "May 28, 2020 through no earlier than November, 2020" (*Sow* Proposed Class) is just not the kind of amorphous task that *Camotex* describes. That is, as far as limiting membership, it is only those people who actually faced force — and the size of the class is fully in the control of Defendants; they merely need to use less extreme force to control the class's size.[19]

In short, nothing in the *Sow* Proposed Class divides its members into wildly divergent, cross-purposed "specialized grievances." *Camotex*, 741 F. Supp. at 1091. Their interests all align perfectly: They were unlawfully arrested and assaulted by members of the NYPD, for exercising First Amendment rights. Nor were Defendants (in the course of *In re Policing*) without a remedy if they thought they didn't have notice of what was at issue. They might have moved to strike the class allegations, as the City sometimes does. *See, e.g.,* Motion to Strike Class Action Allegations, *Phillips v. City of New York*, 21-cv-8149 (ALC) (SLC), ECF No. 187 (SDNY 2024). Rather, the *Sow* Proposed

---

[19] Because the class also had injunctive, forward-looking claims, there was a continuing membership. But an injunctive class does not have the same limits as a damages class — and Defendants only cite cases about "amorphous" class membership for damages classes.

Class fell well into the mainstream of policy-based class actions against police, and in particular, the NYPD.

## II.   The Parties Agree on Collateral Estoppel.

Defendants argue that "Plaintiffs' claims against the individual defendants" besides de Blasio "are barred by collateral estoppel," because those issues were resolved in *In re Policing*. DMOL at 1. Because it was not necessarily certain the City would agree this was the case, Plaintiffs included all the policy-level Defendants named in *In re Policing*. With Defendants' agreement that Judge McMahon's decision in *In re Policing* has a collateral estoppel effect here, Plaintiffs agree that the Court should dismiss claims against Defendants Shea and Monahan.

## III.   Defendants' *Monell* Arguments are Misguided and Barred.

### A.   Defendants' *Monell* arguments are barred by collateral estoppel.

With the parties' agreement about collateral estoppel comes clear rejection of all of Defendants' *Monell* arguments. As alluded to above, Judge McMahon clearly and unambiguously rejected essentially all of the arguments Defendants make here about the *Monell* claims, even calling one of them "absurd." *In re Policing*, 548 F Supp 3d at 404. Plaintiffs agree the minor clean up of the claims in *In re Policing* should govern.

Judge McMahon directly found it well-pled — on nearly verbatim the same allegations — that the injuries here were caused by, for example, "a widespread practice of trying to control crowds at protests — notably those with political overtones, which plainly implicated Plaintiffs' First Amendment rights — by employing excessive force (whether by baton or bicycle is irrelevant) and by making mass arrests without probable cause" (*id*. at 402); a "history of employee mismanagement" (*id*. at 404); "publicly praising, failing to discipline, and, at times, even rewarding officers for their [mis]conduct" (*id*. at 406); and "a policy of deliberate indifference to Plaintiffs' constitutional rights" (*id*.). Since Defendants agree that decision has a "collateral estoppel" effect, Defendants' arguments

otherwise are "barred." DMOL at 1.  That eliminates all of their Point III(B).

### B. Plaintiffs incorporate by reference Judge McMahon's *In re Policing* decision, which explains why Defendants are wrong.

Even if collateral estoppel did not bar the argument, the argument should be rejected for the well-explained reasons in Judge McMahon's decision anyway.  Bizarrely, despite asserting it has a "collateral estoppel" effect, Defendants do not even *cite* — much less distinguish — *In re Policing* in their discussion of *Monell*.  DMOL at 17-20.  And the allegations here are anything but "conclusory" (DMOL at 19), and "Defendants do not cite a single case requiring this Court to narrow its view of the *Monell* claim to a single, individual tactic employed by police." *In re Policing*, 548 F Supp 3d at 402. With the space available here, Plaintiffs incorporate by reference the 45 page decision Judge McMahon took the time to write, explaining why Defendants' arguments here are fundamentally misguided.  Her reasoning is sound, and it addresses at length the exact same allegations pled here.

### C. Defendants misunderstand the underlying claim doctrine.

The only argument not directly barred by collateral estoppel is Defendants' claim that because there is "no claim against the individual Defendants," it necessarily means that there can be no *Monell* claim.  DMOL at 16-17.  Not so.  What Defendants advance here is a basic misunderstanding of the relevant doctrine.  To be sure, it is true that there must be an underlying constitutional violation for a *Monell* claim to lie.  *See generally, City of Los Angeles v. Heller*, 475 US 796, 799 (1986). But there is no rule at all that the people committing that violation must be named, or the violation must be reduced to judgment (and the cases Defendants cite are short-handing the issue).

Explanations of why Defendants' argument fails are most often seen in the context of cases with qualified immunity or unidentified John Doe defendants.  Recall that what *Monell* requires is an underlying constitutional *violation* — not a judgment against a specific individual.  As the Second Circuit has explained, even dismissal at trial cannot "save a defendant municipality from liability where an individual officer is found not liable because of qualified immunity." *Curley v Vil. of Suffern*, 268

F3d 65, 71 (2d Cir. 2001). Courts thus permit *Monell* claims to continue without individual defendants in many situations, ranging from failure to serve individual Defendants (*Escobar v City of NY*, 766 F Supp 2d 415, 418 (EDNY 2011)), to trial verdicts in favor of individuals (*Curleym*, 268 F3d at 71), to naming and failing to identify a John Doe before a statute of limitations (*Coronna v County of Suffolk*, 2008 US Dist LEXIS 45075, at *24 (EDNY June 9, 2008).

Without belaboring the point, "[w]hile the C[ity] is correct in stating that Plaintiff[s] must prove the underlying constitutional violation by an individual acting under color of state law, it is incorrect in its conclusions that the individual actor must be named as a party in the action and that, because the statute of limitations precludes such individual from being added as a party, the [City] is entitled to [dismissal]." *Id.*

## IV. The Claims Against de Blasio are Plausible and Require Discovery.

Defendants acknowledge Judge McMahon allowed individual claims against Defendant de Blasio to proceed (except as to the curfew order itself). DMOL at 14; *accord In re Policing*, 548 F Supp 3d at 410. Those claims were about "the strategies employed by the NYPD beginning during the June 3 and June 4 protests," on which he said he "approved the broad strategies and sometimes very specific choices." *In re Policing*, 548 F Supp 3d at 410. "This gets the plaintiffs past a motion to dismiss." *Id.*

Nor is there any daylight between what Judge McMahon was looking at and the claims here. For example, Plaintiff Olukayode was hit over the head with a baton on June 3. And de Blasio expressed his approval of "video showing NYPD officers hitting protesters with batons at a protest on June 3." *Id.* at 406. Defendant de Blasio was clear he approved the broad strategies and sometimes very specific choices" (*id.* at 410) including the use of batons. That is sufficient for a motion to dismiss.

## CONCLUSION

For all the reasons discussed above, Plaintiffs respectfully request that the Court deny the pending motion to dismiss, except to the extent that the parties agree to dismissal of claims against Defendants Shea and Monahan.


Dated:    October 10, 2025
          Queens, New York


Respectfully submitted,

**BELDOCK LEVINE & HOFFMAN LLP**


By: _____
    Jonathan C. Moore
    David B. Rankin


99 Park Avenue, PH/26th Floor
New York, New York 10016
        t: 212-490-0400
        f: 212-277-5880
        e: jmoore@blhny.com
           drankin@blhny.com
           oclark@blhny.com


**WYLIE STECKLOW PLLC**


By: _____
Wylie Stecklow
Wylie Stecklow PLLC
Carnegie Hall Tower
152 W. 57th Street, 8th Floor
NYC NY 10019
t: 212 566 8000
Ecf@wylielaw.com

**GIDEON ORION OLIVER**


_____
277 Broadway, Suite 1501
New York, NY  10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com


**COHEN&GREEN P.L.L.C.**


By: _____
Elena L. Cohen
J. Remy Green
Regina J. Yu


1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
        t: (929) 888-9480
        f: (929) 888-9457
        e: elena@femmelaw.com
           remy@femmelaw.com